# EXHIBIT A

POLICY NUMBER   **4-100159**

# LONE STAR



Renewal ⊠ New Policy ☐

**Agent – USI/HLS**

**DECLARATIONS PAGE**
**Professional Liability Insurance Policy**
**Occurrence**

NAMED INSURED: (including mailing address)

**Valitas Health Services, Inc.**
**103 Powell Court**
**Brentwood, TN 37027**

NAMED INSURED IS A(N):   **Group**
NOTICE:  THIS POLICY IS ISSUED BY YOUR
RISK RETENTION GROUP
Your risk retention group may not be subject to all of the insurance laws and regulations of your state.  State insurance insolvency guaranty funds are not available for your risk retention group.

POLICY PERIOD:

| | | |
|---|---|---|
| Effective Date: | **01/01/2017** | Beginning and ending at 12:01 a.m. |
| Expiration Date: | **01/01/2018** | |

SPECIALTY:   **See Schedule of Insureds**

TOTAL PREMIUM:   **$1,000,000**
**Premium is fully earned at policy inception.**

LIMITS OF LIABILITY:

| | |
|---|---|
| TOTAL POLICY AGGREGATE LIMIT | $22,500,000 |
| | |
| AGGREGATE SELF-INSURED RETENTION* | $18,500,000 |
| | |
| MEDICAL GROUP PROFESSIONAL LIABILITY: | |
| Each Medical Incident – Each Physician Insured Limit | $1,000,000 |
| Each Medical Incident – All Other Non-Physician Insureds Combined Limit | $1,000,000 |
| Each Medical Incident Aggregate – All Insureds Combined Limit** | $2,000,000 |
| Each Physician Insured Aggregate Limit | $3,000,000 |
| Each Medical Incident – Physician Insured Self-Insured Retention | $1,000,000 |
| Each Medical Incident – All Other Non-Physician Insureds Combined Self-Insured Retention | $1,000,000 |
| Each Medical Incident Aggregate – All Insureds Combined Self-Insured Retention** | $2,000,000 |
| Each Physician Insured Aggregate Self-Insured Retention | $3,000,000 |
| | |

*The Aggregate Self-Insured Retention reduces the Total Policy Aggregate Limit.  The Aggregate Self-Insured Retention is reduced by damages only, not **Defense Costs**.  **Defense Cost** are paid directly by the **First Named Insured** and do not erode the Limits of Insurance or the Self-Insured Retention.  Thus, the maximum total amount payable as damages by Lone Star Alliance, Inc. is $4,000,000.
** The Each Medical Incident Aggregate – All Insureds Combined Limit and Self-Insured Retention apply regardless of the number of Insured defendants involved or named in a **medical incident**.

This Declarations Page, along with the coverage forms and *endorsements* attached, completes the above numbered policy and is part of and subject to all terms, conditions and exclusions of the above numbered policy and any *endorsements* issued by the Corporation to the *Named Insured*.

Issue Date:    **12/27/2016**            Countersigned by: _____

**AM**                                                    Authorized Representative of
                                                          Lone Star Alliance Inc., A Risk Retention Group

844  595  8866        P.O. Box 160140
lonestara.com         Austin, Texas  78716-0140

# LONE STAR



# MEDICAL PROFESSIONAL LIABILITY INSURANCE POLICY
# OCCURRENCE

## I. *INSURING AGREEMENT*

**Medical Group Professional Liability**

**We** will reimburse the **First Named Insured** those sums in excess of the self-insured retention set forth in the Declarations Page of this policy that an **Insured** becomes legally obligated to pay others as damages resulting from a **medical incident** arising out of **professional services**. The **medical incident** must take place during the **policy period**. A **claim** for a **medical incident** must be made within the coverage territory. The amount **we** will pay for damages is limited as described in Section IV. LIMITS OF INSURANCE.

When the Aggregate SIR has been exhausted by actual payments, **we** will reimburse the **First Named Insured** within 30 days of receipt of proof of indemnity payment by the **First Named Insured**, excess of the self-insured retention aggregate, for a covered **claim**.

This policy does not provide any **insured** with a defense to a **claim**, disciplinary proceeding or administrative proceeding. The policy does not pay or reimburse attorneys' fees or any other defense costs. Such fees and expenses are excluded in their entirety and do not reduce or exhaust any limits of liability or Self-Insured Retention. Payment of **defense costs** is the responsibility of the **First Named Insured**.

## II. *WHO IS AN INSURED*

The following are **Insureds** under this Coverage Part:

A. The **First Named Insured (You)** and any other Named **Insureds** shown on the Schedule of Named **Insureds**.

B. A newly formed or acquired subsidiary or affiliated entity of the **First Named Insured**, acquired or formed during the **policy period** for which the primary business is providing correctional healthcare, and for which the **First Named Insured** (a) has more than 50% ownership, OR (b) exercises management or financial control.

C. A Professional Corporation (P.C.) or Professional Association (P.A.) that is a party to a written contract with a subsidiary or affiliated entity of the **First Named Insured** during the **policy period**, but only with respect to a **medical incident** arising out of correctional healthcare services provided to correctional facilities under such written contract.

D. A partnership or joint venture, but only if the partnership or joint venture is specifically listed as a Named **Insured**. The partnership's partners or joint venture's members are also **Insureds**, but

1

only with respect to the conduct of **your** business. No person or organization is an **Insured** with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named **Insured** in the Declarations.

E.    A limited liability company, but only if the limited liability company is specifically listed as a Named **Insured**. The limited liability company's members are also **Insureds**, but only with respect to the conduct of **your** business. **Your** managers are **Insureds** but only with respect to their duties as **your** managers.

F.    If **you** are designated in the Declarations as other than partnership, joint venture or limited liability company, the organization so designated and any **Executive Officer**, director or stockholder thereof while acting within the scope of his duties for **you**.

G.    **Your Physician Insureds.**

H.    **Your employees**, other than **your Physician Insureds**, but only for acts within the scope of their employment by **you** or while performing duties related to the conduct of **your** business.

I.    Any **Physician Insureds** or any of **your** other employed or contracted healthcare providers for the providing of **professional services** as a Good Samaritan away from **your** premises in sudden and unforeseen emergencies outside the scope of his or her **patient** care duties for **you**, provided that, no remuneration is demanded, expected or received.

J.    Members of **your** boards and committees, including physician members of **your** Medical Advisory Board and the Technical Advisory Panel, but only for conduct arising out of their duties as board or committee members. Any **Physician Insured** while acting as a member of any committee of any licensed hospital or other healthcare facility, professional medical association or society or of a legally constituted professional standards review organization at **your** request.

K.    Any **locum tenens** healthcare professional engaged to act on **your** behalf as a replacement while an **Insured** or a **Physician Insured** is temporarily absent from professional practice, only while acting within the scope of their employment by **you**.

L.    Any student enrolled in a training program in connection with **your professional services**, but only when acting within the scope of his or her duties and at **your** direction.

M.    Any of **your** authorized volunteer workers, other than a healthcare provider, but only while acting within the scope of their duties as such and at **your** direction.

N.    **Your** superintendents, administrators, directors, department heads, medical directors and heads of the medical staff, but only in their capacity as such.

O.    **Your** trustees and governors, but only for the conduct of **your** business within the course and scope of their employment or their duties as trustees or governors.

## III.   EXCLUSIONS

This insurance does not apply to any **medical incident, claim** or **suit** arising out of:

A.   Contractual Liability

Any liability **you** assume under any contract or agreement.

This exclusion does not apply to:

1. Liability that **you** would have in the absence of a contract or agreement;

2. Liability **you** assume in a written contract with:

   a. A Health Maintenance Organization;

   b. A Preferred Provider Organization;

   c. An Independent Practice Association; or

   d. Any other similar organization;

   but only for such liability as is attributable to an **Insured's** alleged negligence arising out of **professional services**; or

3. A warranty of fitness or quality of any therapeutic agents or supplies an **Insured** has furnished or supplied in connection with treatment that has been performed.

B. Unfair Trade Practices

Any allegations of price fixing, unfair competition or trade practices; a dispute over fees, income or revenue; the inducement to enter into, the interference with or the dissolution or termination of any business or economic relationship; or violations of any federal, state or local law (including but not limited to Title 15 of the United States Code or any similar state statute) that prohibits the unlawful restraint of trade, business or profession.

This exclusion shall not apply to allegations of restraint of trade, business or profession arising out of the activities of the **Insured's** professional boards or committees as described in Section II. WHO IS AN **INSURED**, I. provided that settlement thereof or final judgment rendered therein does not affirm a violation of law.

C. U.S. Department of Health & Human Services (HHS)

Any administrative or judicial hearings pertaining to Medicare/Medicaid fraud or any other hearing initiated against an **Insured** by HHS or by any utilization or quality review organization under contract with HHS.

This exclusion does not apply to HHS proceedings that allege the violation of the Emergency Medical Treatment and Labor Act.

D. Workers Compensation and Similar Laws

Any obligation an **Insured** has under a workers compensation, disability benefits, or unemployment compensation law or any similar law.

E. Employer's Liability

3

1. **Bodily Injury** to an **employee** of **yours** arising out of and in the course of:

    a. Employment by **you**; or

    b. While performing duties related to the conduct of **your** business; or

2. **Claims** or **suits** by a spouse, child, parent, grandparent, brother, or sister of that **employee** as a consequence of sub-paragraph a. above.

This exclusion applies:

1. Whether **you** may be liable as an employer or in any other capacity; and

2. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

F. Employment Practices

Refusal to employ, termination of employment, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, or other practices or policies related to employment for which a **claim** or **suit** is brought by an **Insured** or the spouse, parent, brother or sister of that **Insured**.

This exclusion does not apply to services by any person as a member of **your** formal accreditation, standards review or similar professional board or committee otherwise covered by this policy.

G. ERISA

Employee Retirement Income Security Act (ERISA) of 1974 or amendments thereto, or any similar state law.

H. War

War, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

I. Dishonest Practices

Dishonest, fraudulent, criminal or malicious acts, errors, or omissions.

J. Pollution

1. The actual, alleged, or threatened, discharge, dispersal, seepage, migration, release, or escape of **pollutants**;

2. Any direction, request, demand, order or statutory or regulatory requirement to test for, monitor, investigate, cleanup, remove, contain, treat, detoxify, or neutralize **pollutants** or in any way respond to or assess the effects of **pollutants**; or

3. Any cost, charge, expense or request for reimbursement arising out of 1. or 2. above.

K. Nuclear Hazards

4

Nuclear fission, nuclear fusion or radioactive contamination.

This exclusion does not apply to **bodily injury** to a **patient** arising out of the practice of Nuclear Medicine.

L. Asbestos

The manufacture, mining, use, sale, installation, removal, abatement, clean-up, distribution or exposure to asbestos, asbestos containing waste materials, asbestos waste, asbestos fibers, asbestos products and asbestos dust.

M. Sexual Misconduct

Any sexual act, including without limitation sexual intimacy (even if consensual), sexual contact, sexual advances, requests for sexual favors, sexual molestation, sexual assault, sexual abuse, sexual harassment, sexual exploitation or other verbal or physical conduct of a sexual nature. However, if required by written contract with the Named **Insured**, this exclusion does not apply to:

1. Any specific individual **Insured** who allegedly committed such sexual misconduct, unless there is an admission of guilt or it is judicially determined that the specific individual **Insured** committed the sexual misconduct. If there is an admission of guilt or it is judicially determined that the specific individual **Insured** committed the sexual misconduct **we** will not pay any damages.

2. Any other **Insured**, unless there is an admission of guilt or judicial determination that such **Insured**:

   a. knew or should have known about the sexual misconduct allegedly committed by the specific individual **Insured**, but failed to prevent or stop it; or

   b. knew or should have known that the specific individual **Insured** who allegedly committed the sexual misconduct had a prior history of such sexual misconduct.

As used in this exclusion, specific individual **Insured** includes **employees** and authorized volunteer workers while performing duties related to the conduct of **your** business.

N. Discrimination/Humiliation

Discrimination based on, but not limited to race, color, creed, sex, religion, age, national origin, physical impairment, sexual preference, nor any **claims** involving humiliation or mental anguish, arising out of such discrimination whether or not for alleged violation of any federal, state or local government law or regulation prohibiting such discrimination.

However, this exclusion does not apply to any Civil Rights Violation alleged pursuant to 42 USC § 1983, et seq., provided that, such Civil Rights Violation arises out of a **medical incident** for which the **Insured** is legally liable.

O. Expected or Intended Injury

Damages or harm expected or intended from an **Insured's** standpoint.

5

P.   Other Coverage Parts

Any **claims** or **suits** brought under any Coverage Part of this policy other than this MEDICAL GROUP PROFESSIONAL LIABILITY OCCURRENCE COVERAGE PART.

Q.   **Insured** vs. **Insured**

Any **claims** made by one **Insured** against another **Insured.**

This exclusion does not apply to:

1.   Services by any person as a member of **your** formal accreditation, standards review or similar professional board or committee otherwise covered by this policy; or

2.   **Medical incidents** involving **your employees,** students, volunteers or others that are considered within the policy definition of **Insureds** when they are receiving medical treatment from another **Insured.**

R.   Penalties

Any fines or penalties.

S.   Current or Past Partnerships or Joint Ventures

Arising out of any current or past partnership or joint venture not named as an **Insured** in this policy.

*IV.   LIMITS OF INSURANCE*

The Limits of Liability shown on the Declarations Page apply as follows:

A.   The Each **Medical Incident** – Each **Physician Insured** Limit and the Each **Medical Incident** All Other Non-Physician **Insured's** Combined Limit are the most **we** will pay for damages under Section I. INSURING AGREEMENT – MEDICAL GROUP PROFESSIONAL LIABILITY for a single **medical incident** and/or all **bodily injury** to any one **patient** arising out of a single **medical incident** regardless of the number of **claims** made or **suits** brought; or persons or organizations making **claims** or bringing **suits.**

1.   The Each **Medical Incident** – Each **Physician Insured** Limit applies separately to each **Physician Insured;** however any **locum tenens** and each **Physician Insured** for whom the **locum tenens** is substituting will share the same Each **Medical Incident** – Each **Physician Insured** Limit; and

2.   The Each **Medical Incident** All Other Non-Physician **Insured's** Combined Limit applies to all Named **Insureds** and all additional **Insureds** collectively, other than each **Physician Insureds.** This limit applies regardless of the number of **Insureds** who are covered under this policy.

All related or interrelated **medical incidents** causing **bodily injury** to a **patient** shall be deemed a single **medical incident** for the purpose of applying each **medical incident** limit.

6

Refer to the "Self-Insured Retention Endorsement" with respect to the reduction of the Each **Medical Incident** – Each **Physician Insured** Limit and the reduction of the Each **Medical Incident** All Other Non-Physician **Insured's** Combined Limit.

B.   The Each **Physician Insured** Aggregate Limit and All Other Non-Physician **Insureds** Aggregate Limit are the most **we** will pay for damages under Section I. INSURING AGREEMENT – MEDICAL GROUP PROFESSIONAL LIABILITY for each **policy period**.

   1.   Each **Physician Insured** Aggregate Limit applies separately to each **Physician Insured**; however any **locum tenens** and the **Physician Insured** for whom the **locum tenens** is substituting will share the same Each **Physician Insured** Aggregate Limit;

   2.   All Other Non-Physician **Insureds** Aggregate Limit separately to all Named **Insureds** and all additional **Insureds** collectively, other than each **Physician Insureds**. This limit applies regardless of the number of **Insureds** who are covered under this policy.

C.   The Limit of Insurance shown on the Declarations as the Total Policy Aggregate Limit is the most **we** will pay for all damages under the MEDICAL GROUP PROFESSION LIABILITY COVERAGE PART combined. Refer to the "Self-Insured Retention Endorsement" with respect to the reduction of the Total Policy Aggregate Limit.

D.   Subject to paragraph A., B, and C. above, all **claims** arising from one **medical incident** or a series of related **medical incidents** to any one **patient** shall be deemed to be a single **medical incident** and shall be deemed to have occurred at the time of the first **medical incident** regardless of the number of claimants, or the number of **Insureds** against whom such **claims** are made. If a **medical incident** commences prior to the inception date of the first policy issued by **us** and continues thereafter, such fact will not prejudice such **medical incident** being covered under such first policy issued by **us**.

E.   If the **policy period** is extended for an additional period of less than 12 months, the additional period will be deemed part of the **policy period** for purposes of determining the Limits of Insurance.

7



# LONE STAR

*This endorsement* forms a part of **POLICY NUMBER    4-100159**

*Policy Term*:                             **01/01/2017 to 01/01/2018**
*Endorsement* Effective Date:    **01/01/2017**
*Insured*:                                    **Valitas Health Services, Inc.**

## POLICY ENDORSEMENT
### Schedule of Forms and Endorsements

Declarations Page
Medical Professional Liability Insurance Policy **OCCURRENCE**
Schedule of Forms and Endorsements
Schedule of Additional Insureds
Limits of Insurance for Specific Contracts Endorsement
State Requirements Endorsement
Additional Insured, Blanket Endorsement
Additional Insured, Limited Endorsement
Self-Insured Retention Endorsement
Patient Bodily Injury Coverage Endorsement
Policy Audit Endorsement
Minimum Earned Premium Endorsement
Pennsylvania Physician Coverage Endorsement
Maximum Aggregate Self-Insured Retention Erosion Endorsement
Polk County Iowa Endorsement

Nothing in this *endorsement* shall be held to amend, vary, extend or waive any of the terms, conditions, exclusions, representations, warranties and/or agreements in *this policy*, any other *endorsement* or any Declarations Page, except as expressly stated in this *endorsement*.

If *this policy* is initially issued with this *endorsement* forming a part thereof at that time and having the same effective date as such policy, or if this *endorsement* is issued together with any renewal or amendatory Declarations Page for *this policy* and having the same effective date as such Declarations Page, then no countersignature on this *endorsement* is necessary.   Otherwise this *endorsement* shall not be valid and binding on the Corporation unless countersigned below by an authorized representative of the Corporation.

This *endorsement* takes effect as of the beginning day and hour for the *policy period* of *this policy* stated in the applicable initial, renewal or amendatory Declarations Page, unless a different *endorsement* effective date is inserted above.

Issue Date:    **12/27/2016**                              Countersigned by: _____
                                                                                          Authorized Representative of
**AM**                                                                            Lone Star Alliance Inc., A Risk Retention Group

**OCCURRENCE**                              844 595 8866        P.O. Box 160140              LSA_50
                                                        lonestara.com          Austin, Texas 78716-0140    ver 0414



**LONE STAR**

This *endorsement* forms a part of

*Policy Term:*
*Endorsement* Effective Date:
*Insured:*

**POLICY NUMBER    4-1000159**

01/01/2017 to 01/01/2018
01/01/2017
Valitas Health Services, Inc.

## POLICY ENDORSEMENT
### Schedule of Additional Insureds

In consideration of the premium charged for **this policy** and this **endorsement**, it is hereby understood and agreed, subject to all terms, conditions and exclusions of **this policy** that the parties listed below are included as Additional **insureds**.

In no event shall the Trust be liable under **this policy** for more than the limits of liability stated in the applicable Declarations Page or any **endorsement** of **this policy**.

| Additional **insured(s)** | Effective Date(s) | Termination Date(s) |
|---|---|---|
| Valitás Health Services, Inc. | 01/01/2017 | |
| Valitás Equity LLC | 01/01/2017 | |
| Valitás, Inc. | 01/01/2017 | |
| Correctional Medical Services, Inc., a Missouri Corporation | 01/01/2017 | |
| Correctional Medical Services of Illinois, Inc. | 01/01/2017 | |
| Correctional Medical Services of Delaware, Inc. | 01/01/2017 | |
| PharmaCorr, LLC, a Delaware Limited Liability Company | 01/01/2017 | |
| Valitás Behavioral Services, Inc. | 01/01/2017 | |
| Genesis Behavioral Services, Inc. | 01/01/2017 | |
| Valitás Behavioral Services of Delaware, Inc. | 01/01/2017 | |
| Corizon, LLC | 01/01/2017 | |
| Corizon, Inc. (fka Correctional Medical Services, Inc.) | 01/01/2017 | |
| Corizon Health, Inc. (fka America Service Group, Inc.) | 01/01/2017 | |
| Corizon Health of New Jersey, LLC (fka Correctional Health Services, Inc.) | 01/01/2017 | |
| PHS Community Care, LLC | 01/01/2017 | |
| America Service Group, Inc. | 01/01/2017 | |
| Prison Health Services, Inc. | 01/01/2017 | |
| Prison Health Services of Indiana, LLC | 01/01/2017 | |
| Correctional Health Services, Inc. | 01/01/2017 | |
| Correctional Health Services, LLC | 01/01/2017 | |
| EMSA Correctional Care, Inc. | 01/01/2017 | |
| EMSA Military Services, Inc. | 01/01/2017 | |
| EMSA Government Services, Inc. | 01/01/2017 | |
| EMSA Limited Partnership | 01/01/2017 | |
| PHS Medical Services, P.C. | 01/01/2017 | |
| Correctional Medical Associates of New York, P.C. (fka PHS Medical Services, P.C.) | 01/01/2017 | |
| PHS of Kansas, P.A. | 01/01/2017 | |
| PHS Professional Medical Services, P.C. | 01/01/2017 | |
| Quality Correctional Care of Tennessee, P.C. (fka PHS Professional Medical Services, P.C.) | 01/01/2017 | |
| PHS Regional Medical, PC | 01/01/2017 | |
| PHS Professional Medical Service, PSC | 01/01/2017 | |
| PHS Dental Services, PC | 01/01/2017 | |
| Correctional Dental Associates of New York, P.C. (fka PHS Dental Services, P.C.) | 01/01/2016 | |
| Prison Medical, P.A | 01/01/2017 | |
| Saavedra, M.D., PHS of Nevada Medical Services. P.C. | 01/01/2017 | |
| Young S. Kim, M.D. P.C. dba PHS of IL Medical Services | 01/01/2017 | |
| PHS Medical Corporation | 01/01/2017 | |

| | |
|---|---|
| **Comprehensive Correctional Care, P.C. (fka PHS Medical Corporation)** | **01/01/2017** |
| **PHS of North Carolina Medical Services, PC** | **01/01/2017** |
| **CHS Medical Services P.C.** | **01/01/2017** |
| **Quality Correctional Care of New Jersey, P.C. (fka CHS Medical Services, P.C.)** | **01/01/2017** |
| **Correctional Dental Associates of Arkansas, PA** | **01/01/2017** |
| **Correctional Healthcare Associates of Kansas, PA** | **01/01/2017** |
| **Correctional Medical Associates of Greater New York, PC** | **01/01/2017** |
| **Correctional Physician Associates of Arkansas, PA** | **01/01/2017** |
| **Ivor Garlick, MD PC and Correctional Dental Associates** | **01/01/2017** |
| **PHS of Michigan, PC** | **01/01/2017** |
| **Quality Correctional Care of Michigan, PC** | **01/01/2017** |
| **Correctional Dental Associates of Alabama, PC** | **01/01/2017** |

Nothing in this *endorsement* shall be held to amend, vary, extend or waive any of the terms, conditions, exclusions, representations, warranties and/or agreements in *this policy*, any other *endorsement* or any Declarations Page, except as expressly stated in this *endorsement*.

If *this policy* is initially issued with this *endorsement* forming a part thereof at that time and having the same effective date as such policy, or if this *endorsement* is issued together with any renewal or amendatory Declarations Page for *this policy* and having the same effective date as such Declarations Page, then no countersignature on this *endorsement* is necessary.   Otherwise this *endorsement* shall not be valid and binding on the Corporation unless countersigned below by an authorized representative of the Corporation.

This *endorsement* takes effect as of the beginning day and hour for the *policy period* of *this policy* stated in the applicable initial, renewal or amendatory Declarations Page, unless a different *endorsement* effective date is inserted above.

Issue Date:    **12/27/2016**                                          Countersigned by: _____

  **AM**                                                                              Authorized Representative of
                                                                                    Lone Star Alliance Inc., A Risk Retention Group

                                                                                                            OCC_LSA_52A

**OCCURRENCE**                                                                                    ver 0414

844 595 8866        P.O. Box 160140
lonestara.com        Austin, Texas 78716-0140



# LONE STAR

This endorsement forms a part of

Policy Term:
Endorsement Effective Date:
Insured:

**POLICY NUMBER    4-1000159**

**01/01/2017 to 01/01/2018**
**01/01/2017**
**Valitas Health Services, Inc.**

## POLICY ENDORSEMENT
### Limits of Insurance for Specific Contracts

The policy is amended as follows:

With respect to a **medical incident** governed by the **First Name Insured's** contract with the following, the Medical Group Professional Liability Limits of Insurance and Self-Insured Retention shown on the DECLARATIONS are deleted in their entirety and replaced with the following:

| Indiana Contracts (Patient's Compensation Fund Enrollees) | Limit of Insurance | Self-Insured Retention |
|---|---|---|
| Each **Medical Incident** – Each Patient's Compensation Fund Enrolled **Insured** | $ 250,000 | $ 250,000 |
| Each Patient's Compensation Fund Enrolled **Insured** Aggregate | $ 750,000 | $ 750,000 |
| Each **Medical Incident** Aggregate – All **Insureds** Combined | N/A | N/A |

Limits of Insurance and Self-Insured Retention show above apply only if an **Insured** is a qualified healthcare provider and is enrolled in the Indiana Patient's Compensation Fund.  The Total Policy Aggregate Limit shown on the DECLARATIONS does not apply to the Indiana Patient's Compensation Fund Enrolled **Insureds**, as per the rules of the Fund.

| Florida Department of Corrections | Limit of Insurance | Self-Insured Retention |
|---|---|---|
| Each **Medical Incident** – Each **Physician Insured** | $ 250,000 | $ 250,000 |
| Each **Medical Incident** - All Other Non-Physician **Insureds** Combined | $ 250,000 | $ 250,000 |
| Each **Medical Incident** Aggregate – All **Insureds** Combined | N/A | N/A |
| Each **Physician Insured** Aggregate | $ 750,000 | $ 750,000 |

| State of Virginia | Limit of Insurance | Self-Insured Retention |
|---|---|---|
| Each **Medical Incident** – Each **Physician Insured** | $ Per Statute | $ Per Statute |
| Each **Medical Incident** - All Other Non-Physician **Insureds** Combined | $ Per Statute | $ Per Statute |
| Each **Medical Incident** Aggregate – All **Insureds** Combined | 2 x Statutory Limit | 2 x Statutory Limit |
| Each **Physician Insured** Aggregate | $ Per Statute | $ Per Statute |

| State of Missouri | Limit of Insurance | Self-Insured Retention |
|---|---|---|
| Each **Medical Incident** - All **Insureds** Combined | $ 2,000,000 | $ 2,000,000 |
| Aggregate - All **Insureds** Combined | $ 4,000,000 | $ 4,000,000 |

| State of Idaho ** | Limit of Insurance | Self-Insured Retention |
|---|---|---|
| Each **Medical Incident**- All **Insureds** Combined | $ 3,000,000 | $ 3,000,000 |
| Aggregate – All **Insureds** Combined | $ 10,000,000 | $10,000,000 |
| Each **Medical Incident** Aggregate Self-Insured Retention Erosion Maximum** | N/A | $ 2,000,000 |

| Fulton County Jail, GA | Limit of Insurance | Self-Insured Retention |
|---|---|---|
| Each **Medical Incident**- All **Insureds** Combined | $ 2,000,000 | $ 2,000,000 |
| Aggregate – All **Insureds** Combined | $ 4,000,000 | $ 4,000,000 |

| Santa Barbara County Jail, CA ** | Limit of Insurance | Self-Insured Retention |
|---|---|---|
| Each **Medical Incident**- All **Insureds** Combined | $ 3,000,000 | $ 3,000,000 |
| Aggregate – All **Insureds** Combined | $ 5,000,000 | $ 5,000,000 |
| Each **Medical Incident** Aggregate Self-Insured Retention Erosion Maximum** | N/A | $ 2,000,000 |

| Fresno County Jail, CA ** | Limit of Insurance | Self-Insured Retention |
|---|---|---|
| Each **Medical Incident** - All **Insureds** Combined | $ 3,000,000 | $ 3,000,000 |
| Aggregate – All **Insureds** Combined | $ 5,000,000 | $ 5,000,000 |
| Each **Medical Incident** Aggregate Self-Insured Retention Erosion Maximum** | N/A | $ 2,000,000 |

**The maximum amount that the Aggregate Self Insured Retention as shown on the DECLARATIONS shall be eroded by any single **medical incident** is $2,000,000.  Until and unless the Aggregate Self Insured Retention is exhausted on a paid basis, any payments for damages in excess of $2,000,000 for any single **medical incident** are the responsibility of the **First Named Insured**.

Nothing in this *endorsement* shall be held to amend, vary, extend or waive any of the terms, conditions, exclusions, representations, warranties and/or agreements in *this policy*, any other *endorsement* or any Declarations Page, except as expressly stated in this *endorsement*.

If *this policy* is initially issued with this *endorsement* forming a part thereof at that time and having the same effective date as such policy, or if this *endorsement* is issued together with any renewal or amendatory Declarations Page for *this policy* and having the same effective date as such Declarations Page, then no countersignature on this *endorsement* is necessary.   Otherwise this *endorsement* shall not be valid and binding on the Corporation unless countersigned below by an authorized representative of the Corporation.

This *endorsement* takes effect as of the beginning day and hour for the *policy period* of *this policy* stated in the applicable initial, renewal or amendatory Declarations Page, unless a different *endorsement* effective date is inserted above.

Issue Date:     **12/27/2016**                                    Countersigned by:  _____

**AM**                                                                                    Authorized Representative of
                                                                            Lone Star Alliance Inc., A Risk Retention Group

**OCCURRENCE**                                                                                    OCC_LSA_GEN
                                                                                                          ver 1013

844 595 8866        P.O. Box 160140
lonestara.com        Austin, Texas 78716-0140



## LONE STAR

This endorsement forms a part of

**POLICY NUMBER      4-1000159**

Policy Term:                                    **01/01/2017 to 01/01/2018**
Endorsement Effective Date:          **01/01/2017**
Insured:                                            **Valitas Health Services, Inc.**

## POLICY ENDORSEMENT
### State Requirements

In consideration of the premium charged for this policy and this endorsement, it is hereby understood and agreed, subject to all terms, conditions and exclusions of this policy:

1. Indiana - In Indiana, the limits of liability applicable to this policy are not subject to the Total Policy Aggregate Limit.

2. Rikers Island Correctional, NY - This policy is excess over any indemnification provided to the First Named Insured by The City of New York for any covered claim or suit arising out of services or products provided by any Insured at any of the Rikers Island correctional facilities in the State of New York.

3. Arizona DOC - This insurance does not apply to any medical incident, claim, suit or administrative proceeding arising out of any professional services performed pursuant to the contract between the First Named Insured and State of Arizona Department of Corrections commencing March 4, 2013.

4. Florida DOC – Total Policy Aggregate Limit and Aggregate SIR are based on the Florida DOC contract terminating on 05/31/16. Should the contract not terminate or be extended in any way, the Total Policy Aggregate Limit and/or Aggregate SIR may increase proportionally and accordingly to the FL DOC actuarial estimates.

Nothing in this *endorsement* shall be held to amend, vary, extend or waive any of the terms, conditions, exclusions, representations, warranties and/or agreements in *this policy*, any other *endorsement* or any Declarations Page, except as expressly stated in this *endorsement*.

If *this policy* is initially issued with this *endorsement* forming a part thereof at that time and having the same effective date as such policy, or if this *endorsement* is issued together with any renewal or amendatory Declarations Page for *this policy* and having the same effective date as such Declarations Page, then no countersignature on this *endorsement* is necessary.   Otherwise this *endorsement* shall not be valid and binding on the Corporation unless countersigned below by an authorized representative of the Corporation.

This *endorsement* takes effect as of the beginning day and hour for the *policy period* of *this policy* stated in the applicable initial, renewal or amendatory Declarations Page, unless a different *endorsement* effective date is inserted above.

Issue Date:      **12/27/2016**

**AM**

Countersigned by:  _____
                                      Authorized Representative of
                              Lone Star Alliance Inc., A Risk Retention Group

**OCCURRENCE**

844  595  8866
lonestara.com

P.O. Box 160140
Austin, Texas  78716-0140

OCC_LSA_GEN
ver 1013



# LONE STAR

This endorsement forms a part of

**POLICY NUMBER    4-1000159**

Policy Term:                          **01/01/2017 to 01/01/2018**
Endorsement Effective Date:          **01/01/2017**
Insured:                             **Valitas Health Services, Inc.**

## POLICY ENDORSEMENT
### Additional Insured, Blanket

In consideration of the premium charged for this policy and this endorsement, it is hereby understood and agreed, subject to all terms, conditions and exclusions of this policy:

This policy is amended as follows:

Section II. WHO IS AN INSURED of the MEDICAL GROUP PROFESSIONAL LIABILITY OCCURRENCE COVERAGE PART is amended by adding the following:

Any organization is included as additional insured if you are obligated by virtue of a written contract to provide indemnification or insurance as afforded by this Policy to such organization, but only with respect to liability arising out of operations conducted by you or on your behalf.

Notwithstanding any provision in the written contract between you and such organization to the contrary, the organization shall not be construed as an organization acting on your behalf and there shall be no coverage with respect to liability for injury or damages arising out of any act or omission of such organization.

In the event that the Limits of Insurance provided by this Policy exceed the Limits of Insurance required by the written contract, the insurance provided by this endorsement shall be limited to the Limits of Insurance (inclusive of any applicable self-insured retention) required by the written contract. The Limits of Insurance (inclusive of any applicable self-insured retention) provided by this Policy shall not be increased for any reason, including any failure, refusal or inability of any self-insurance/Insured to pay any amounts due thereunder. This endorsement shall not increase the Limits of Insurance shown in the Declarations pertaining to the coverage provided herein.

Any coverage provided by this endorsement to an additional insured organization shall be excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis, unless the written contract with the additional insured specifically requires that this insurance be primary and non-contributory with any other insurance carried by the additional insured. In such case, this insurance shall be primary and non-contributory with any other insurance carried by the additional insured.

In the event of payment under the Policy, we waive our right of subrogation against an organization included as an additional insured where the Named Insured has waived liability of such person or organization as part of a written contractual agreement between the Named Insured and the organization entered into prior to the medical incident.

Nothing in this *endorsement* shall be held to amend, vary, extend or waive any of the terms, conditions, exclusions, representations, warranties and/or agreements in *this policy*, any other *endorsement* or any Declarations Page, except as expressly stated in this *endorsement*.

If *this policy* is initially issued with this *endorsement* forming a part thereof at that time and having the same effective date as such policy, or if this *endorsement* is issued together with any renewal or amendatory Declarations Page for *this policy* and having the same effective date as such Declarations Page, then no countersignature on this *endorsement* is necessary.   Otherwise this *endorsement* shall not be valid and binding on the Corporation unless countersigned below by an authorized representative of the Corporation.

This *endorsement* takes effect as of the beginning day and hour for the *policy period* of *this policy* stated in the applicable initial, renewal or amendatory Declarations Page, unless a different *endorsement* effective date is inserted above.

Issue Date:    **12/27/2016**

**AM**

Countersigned by: _____
                          Authorized Representative of
                  Lone Star Alliance Inc., A Risk Retention Group

**OCCURRENCE**

844 595 8866          P.O. Box 160140
lonestara.com         Austin, Texas  78716-0140

OCC_LSA_GEN
ver 1013



**LONE STAR**

This endorsement forms a part of        **POLICY NUMBER      4-1000159**

Policy Term:                              **01/01/2017 to 01/01/2018**
Endorsement Effective Date:              **01/01/2017**
Insured:                                  **Valitas Health Services, Inc.**

## POLICY ENDORSEMENT
### Additional Insureds, Limited

In consideration of the premium charged for this policy and this endorsement, it is hereby understood and agreed, subject to all terms, conditions and exclusions of this policy:

The following persons and entities area added as Additional Insureds:

1.  Lakewood Healthcare Associates, LLC, is an insured, but only with respect to services rendered by healthcare providers covered by this policy within the scope of their employment for the First Named Insured or pursuant to their written contract with the First Named Insured, whichever is applicable.
2.  Mexico Woman's Health Specialists in Missouri, but only pursuant to its written contract with the First Named Insured, and only as respect to claims or suits alleging a violation under 42 USC § 1983, et seq., provided that, such Civil Rights Violation arises out of a medical incident for which the additional Insured is legally liable.
3.  Indiana Minority Health Coalition ("IMHC"), but only with respect to services rendered by the First Named Insured or any psychiatrist independently contracted with IMHC to work at a location staffed by the First Named Insured.
4.  Gary Campbell, DO, but only as respect to consulting services performed on behalf of the First Named Insured.
5.  Ernest W. Jackson, DMD, Institutional Dental Services, PC, a Missouri Professional Corporation, but only as respect to services performed on behalf of the First Named Insured.
6.  Family Vision Center of Hobbs, NM, but only with respect to services rendered by optometrists and /or other healthcare providers covered by this policy within the scope of their employment for the First Named Insured or pursuant to their written contract with the First Named Insured, whichever is applicable.
7.  Sheryl Salaris, M.D., but only as respect to consulting services performed on behalf of the First Named Insured.
8.  Lee J. Browning, O.D., but only as respect to consulting services performed on behalf of the First Named Insured.
9.  James Thorpe, D.M.D., but only as respect to consulting services performed on behalf of the First Named Insured.
10. Melvin Kolb, M.D.,P.C., is an Insured, but only as respect to services provided by Melvin Kolb, M.D. on behalf of First Named Insured.

Nothing in this *endorsement* shall be held to amend, vary, extend or waive any of the terms, conditions, exclusions, representations, warranties and/or agreements in *this policy*, any other *endorsement* or any Declarations Page, except as expressly stated in this *endorsement*.

If *this policy* is initially issued with this *endorsement* forming a part thereof at that time and having the same effective date as such policy, or if this *endorsement* is issued together with any renewal or amendatory Declarations Page for *this policy* and having the same effective date as such Declarations Page, then no countersignature on this *endorsement* is necessary.   Otherwise this *endorsement* shall not be valid and binding on the Corporation unless countersigned below by an authorized representative of the Corporation.

This *endorsement* takes effect as of the beginning day and hour for the *policy period* of *this policy* stated in the applicable initial, renewal or amendatory Declarations Page, unless a different *endorsement* effective date is inserted above.

Issue Date:     **12/27/2016**                                    Countersigned by: _____

**AM**                                                            Authorized Representative of
                                                                  Lone Star Alliance Inc., A Risk Retention Group

**OCCURRENCE**                                                    OCC_LSA_GEN
                                                                  ver 1013

844 595 8866        P.O. Box 160140
lonestara.com       Austin, Texas 78716-0140

 **LONE STAR**

| | |
|---|---|
| This endorsement forms a part of | **POLICY NUMBER    4-1000159** |
| Policy Term: | 01/01/2017 to 01/01/2018 |
| Endorsement Effective Date: | 01/01/2017 |
| Insured: | **Valitas Health Services, Inc.** |

## POLICY ENDORSEMENT
### Self-Insured Retention

In consideration of the premium charged for *this policy* and this *endorsement*, it is hereby understood and agreed, subject to all terms, conditions and exclusions of *this policy:*

This endorsement modifies insurance provided under all Coverage Parts:

A.  The **First Named Insured** shall be solely responsible for the following as shown in the Declarations:
   1.  The Each Medical Incident – Each Physician Insured Self-Insured Retention;
   2.  The All Other Non-Physician Insured Self Insured Retention; and
   3.  The Aggregate Self Insured Retention which is eroded by No. 1 and No. 2 above.

B.  The Aggregate Self-Insured Retention is included within and reduces the Total Policy Aggregate Limit shown in the Declarations of this Policy.

C.  This Aggregate Self-Insured Retention shall be reduced solely by the payment of damages and not defense costs by the First **Named Insured** for a covered **medical incident** under MEDICAL GROUP PROFESSIONAL LIABILITY OCCURRENCE COVERAGE PART.

D.  With respect to the MEDICAL GROUP PROFESSIONAL LIABILITY OCCURRENCE COVERAGE PART, **our** obligation to pay damages applies only when the Aggregate Self-Insured Retention is exhausted by the payments set forth in Paragraph C. above and then only up to the applicable Limit of Insurance.

   **We** shall have the right, at our own expense, but not the obligation to associate with the **Insured** in the defense, negotiation, and settlement of any **claim**. The Insured shall give us full cooperation and such information as we may reasonably require.

E.  The **First Named Insured** shall handle all **claims** or **suits** within the applicable Self-Insured Retention of this policy. **We** do not have the duty to investigate or defend any **medical incident, claim** or **suit**. However, we may, at **our** discretion and expense, participate with **you** in the investigation of any such **medical incident** and the defense of any such **claim** or **suit** that may result and **you** shall provide **us** with **your** full cooperation. No **Insured** shall settle any **claim** or **suit** which obligates **us** to pay any amount under this policy without **our** prior written consent.

F.  Under no circumstances will we make any payment under this policy unless and until the First Named Insured has exhausted the Aggregate Self-Insured Retention by the payment of damages arising from covered **medical incidents**. If the First Named Insured is unable to pay any part of the Self-Insured Retention due to bankruptcy, insolvency, or other financial difficulty, then this policy will not be required to "drop down" to make payments of policy limits and/or defense costs, and no payment of any kind will be available to the First Named Insured or any Insured under this policy.

Nothing in this *endorsement* shall be held to amend, vary, extend or waive any of the terms, conditions, exclusions, representations, warranties and/or agreements in *this policy*, any other *endorsement* or any Declarations Page, except as expressly stated in this *endorsement*.

If *this policy* is initially issued with this *endorsement* forming a part thereof at that time and having the same effective date as such policy, or if this *endorsement* is issued together with any renewal or amendatory Declarations Page for *this policy* and having the same effective date as such Declarations Page, then no countersignature on this *endorsement* is necessary.   Otherwise this *endorsement* shall not be valid and binding on the Corporation unless countersigned below by an authorized representative of the Corporation.

This *endorsement* takes effect as of the beginning day and hour for the *policy period* of *this policy* stated in the applicable initial, renewal or amendatory Declarations Page, unless a different *endorsement* effective date is inserted above.

Issue Date:     **12/27/2016**                                       Countersigned by:  _____

**AM**                                                                                          Authorized Representative of
                                                                                                Lone Star Alliance Inc., A Risk Retention Group

                                                                                                                                        OCC_LSA_GEN
**OCCURRENCE**                                                                                                              ver 1013

                                                    844  595  8866          P.O. Box 160140
                                                        lonestara.com          Austin, Texas  78716-0140



**LONE STAR**

This endorsement forms a part of

Policy Term:
Endorsement Effective Date:
Insured:

**POLICY NUMBER    4-1000159**

**01/01/2017 to 01/01/2018**
**01/01/2017**
**Valitas Health Services, Inc.**

## POLICY ENDORSEMENT
### Patient Bodily Injury Coverage

In consideration of the premium charged for *this policy* and this *endorsement,* it is hereby understood and agreed, subject to all terms, conditions and exclusions of *this policy:*

I.      SECTION I. INSURING AGREEMENT is amended to include the following coverage:

**Bodily Injury to Patients**

We will pay those sums that an **Insured** becomes legally obligated to pay as damages because of **bodily injury** to a **patient** to which this insurance applies. The amount **we** will pay for damages is limited as described in Section IV. LIMITS OF INSURANCE. *All bodily **injury** in any way sustained by a **patient** shall for the purposes of this endorsement be deemed a **medical incident**.*

This coverage applies to **bodily injury** to a patient only if:

1.   The **bodily injury** is caused by an **occurrence** that takes place in the coverage territory; and

2.   The **bodily injury** occurs during the **policy period**.

II.     The exclusions set forth in Section III. EXCLUSIONS do not apply to coverage provided by the "Bodily Injury to Patients" section of the MEDICAL GROUP PROFESSIONAL LIABILITY OCCURRENCE COVERAGE PART. However, the following exclusions apply to coverage provided by the "Bodily Injury to Patients" section of the MEDICAL GROUP PROFESSIONAL LIABILITY OCCURRENCE COVERAGE PART:

This insurance does not apply to any **medical incident, occurrence, claim** or **suit** arising out of:

A.   **Workers Compensation and Similar Laws**

Any obligation an **Insured** has under a workers compensation, disability benefits, or unemployment compensation law or any similar law.

B.   **Employer's Liability**

1.   **Bodily Injury** to an **employee** of **yours** arising out of and in the course of:

   a.   **Employment** by **you**; or
   b.   Performing **duties** related to the conduct of **your** business; or
   c.   Any Occupational Disease; or

2.   Any **claims** or **suits** brought by a spouse, child, grandparent, parent, brother, or sister of that **employee** as a consequence of paragraph 1. above.

This exclusion applies:

1. Whether **you** may be liable as an employer or in any other capacity; and

2.  To any **obligation** to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by **you** under an **insured contract**.

C.  **Property Damage and Personal and Advertising Injury**

**Property damage** or **personal and advertising injury** of any kind or description, including the obligation to indemnify or hold harmless another person or organization for **property damage** or **personal and advertising injury** pursuant to any contract or agreement.

D.  **Bodily Injury to Any Person Other Than a Patient**

**Bodily injury** to any person who does not qualify as **your patient** at the time that the injury is sustained.

E.  **War**

War, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

F.  **Pollution**

1. The actual, alleged, or threatened, discharge, dispersal, seepage, migration, release, or escape of **pollutants**;

2. Any direction, request, demand, order or statutory or regulatory requirement to test for, monitor, investigate, cleanup, remove, contain, treat, detoxify, or neutralize **pollutants** or in any way respond to or assess the effects of **pollutants**; or

3. Any cost, charge, expense or request for reimbursement arising out of **1.** or **2.** above. This exclusion shall not apply to damages arising out of heat, smoke or fumes from a **hostile fire**. As used in this exclusion, **hostile fire** means a fire which becomes uncontrollable or breaks out from where it was intended to be.

G.  **Employment Practices**

Any refusal to employ, termination of employment, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, or other practices or policies related to employment or professional privileges.

H.  **Dishonest Practices**

Dishonest, fraudulent, criminal or malicious acts, errors, or omissions; however, **we** will defend civil **claims** alleging such acts, errors or omissions until final adjudication.

I.  **Nuclear Hazards**

Nuclear fission, nuclear fusion or radioactive contamination.

J.  **Asbestos**

The manufacture, mining, use, sale, installation, removal, abatement, clean-up, distribution or exposure to asbestos, asbestos containing waste materials, asbestos waste, asbestos fibers, asbestos products and asbestos dust.

**K.    Sexual Misconduct**

Any sexual act, including without limitation sexual intimacy (even if consensual), sexual contact, sexual advances, requests for sexual favors, sexual molestation, sexual assault, sexual abuse, sexual harassment, sexual exploitation or other verbal or physical conduct of a sexual nature. However, this exclusion does not apply to:

1.  Any specific individual **Insured** who allegedly committed such sexual misconduct, unless it is judicially determined that the specific individual **Insured** committed the sexual misconduct. If it is judicially determined that the specific individual **Insured** committed the sexual misconduct **we** will not pay any damages.

2.  Any other **Insured**, unless there is a judicial determination that such **Insured**:

    a.  Knew or should have known about the sexual misconduct allegedly committed by the specific individual **Insured**, but failed to prevent or stop it; or

    b.  Knew or should have known that the specific individual **Insured** who allegedly committed the sexual misconduct had a prior history of such sexual misconduct.

As used in this exclusion, specific individual **Insured** includes **employees** and authorized volunteer workers while performing duties related to the conduct of **your** business.

**L.    ERISA**

The Employee Retirement Income Security Act (ERISA) of 1974 or amendments thereto, or any similar state law.

**M.    Discrimination/Humiliation**

Discrimination based on, but not limited to race, color, creed, sex, religion, age, national origin, physical impairment, sexual preference, nor any **claims** involving humiliation or mental anguish, arising out of discrimination whether or not for alleged violation of any federal, state or local government law or regulation prohibiting such discrimination.

However, this exclusion does not apply to any Civil Rights Violation alleged pursuant to 42

USC § 1983, et seq., provided that, such Civil Rights Violation arises out of a **medical incident** for which the **Insured** is legally liable.

**N.    Insured vs. Insured**

Any **claims** made by one **Insured** against another **Insured**.

This exclusion does not apply to **medical incidents** or **occurrences** involving **your employees**, students, volunteers or others that are considered within the policy definition of **Insureds** when they are registered as **patients** or when they are not acting within the scope of their duties on behalf of the Named Insured. However, this exception does not apply to any **Insured** for which workers compensation applies.

**O.    Other Coverage Parts**

Any **claims** or **suits** brought under any Coverage Part of this Policy other than this **MEDICAL GROUP PROFESSIONAL LIABILITY OCCURRENCE COVERAGE PART.**

**P.    Unfair Trade Practices**

Any allegations of price fixing, unfair competition or trade practices; a dispute over fees, income or revenue; the inducement to enter into, the interference with or the dissolution or termination of any business or economic relationship; or violations of any federal, state or local law (including but not limited to Title 15 of the United States Code or any similar state statute) that prohibits the unlawful restraint of trade, business or profession.

**Q.   U.S. Department of Health & Human Services (HHS)**

Any administrative or judicial hearings pertaining to Medicare/Medicaid fraud or any other hearing initiated against an **Insured** by HHS or by any utilization or quality review organization under contract with HHS.

This exclusion does not apply to HHS proceedings that allege the violation of the Emergency Medical Treatment and Labor Act.

**R.   Expected or Intended Injury**

Damages or harm expected or intended from an **Insured's** standpoint. This exclusion does not apply to **bodily injury** resulting from the use of reasonable force to protect persons or property.

**S.   Contractual Liability**

Liability arising from **bodily injury** for which **you** are obligated to pay damages by reason of the assumption of liability in a contract or agreement except an **insured contract**. This exclusion does not apply to liability for damages:

1.   That **you** would have in the absence of the contract or agreement; or

2.   Assumed in a contract or agreement that is an **insured contract**, provided the **bodily injury** occurs subsequent to the execution of the contract or agreement, provided:

  a.   Liability to such party for, or for the cost of, that party's defense has also been assumed in the same **insured contract**; and

  b.   Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**T.   Liquor Liability**

**Bodily injury** for which an **Insured** may be held liable by reason of:

1.   Causing or contributing to the intoxication of any person;

2.   The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3.   Any statute, ordinance, or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

  This exclusion applies only if **you** are in the business of manufacturing, distributing, selling serving or furnishing alcoholic beverages.

**U.   Aircraft, Auto, or Watercraft**

Ownership, maintenance, use or entrustment to others of any aircraft, **auto**, or watercraft owned or operated by or rented or loaned to **you**. Use includes operation and **loading** or **unloading**.

This exclusion shall not apply to:

1.  A watercraft **while** ashore on premises **you** own or rent;

2.  A watercraft **you** do not own that is:

    a. Less than 26 feet long; and
    b. Not being used to carry persons or property for a charge;

3.  Parking an **auto** on, or on the ways next to premises **you** own or rent, provided the **auto** is not owned by or rented or loaned to **you**;

4.  Liability assumed under any **insured contract** for the ownership, maintenance or use of aircraft or watercraft;

5.  The operation of any of the equipment listed in paragraph 6.b or 6.c. of the definition of **mobile equipment**; or

6.  **Loading** or **unloading** of **patients**.

V.  **Mobile Equipment**

1.  The transportation of **mobile equipment** by an **auto** owned or operated by or rented or loaned to any **Insured**; or

2.  The use of **mobile equipment** in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

W.  **Penalties**

Any fines or penalties.

Nothing in this *endorsement* shall be held to amend, vary, extend or waive any of the terms, conditions, exclusions, representations, warranties and/or agreements in *this policy*, any other *endorsement* or any Declarations Page, except as expressly stated in this *endorsement*.

If *this policy* is initially issued with this *endorsement* forming a part thereof at that time and having the same effective date as such policy, or if this *endorsement* is issued together with any renewal or amendatory Declarations Page for *this policy* and having the same effective date as such Declarations Page, then no countersignature on this *endorsement* is necessary.   Otherwise this *endorsement* shall not be valid and binding on the Corporation unless countersigned below by an authorized representative of the Corporation.

This *endorsement* takes effect as of the beginning day and hour for the *policy period* of *this policy* stated in the applicable initial, renewal or amendatory Declarations Page, unless a different *endorsement* effective date is inserted above.

Issue Date:   **12/27/2016**                                    Countersigned by: _____

**AM**                                                                              Authorized Representative of
                                                                        Lone Star Alliance Inc., A Risk Retention Group



## LONE STAR

This endorsement forms a part of

**POLICY NUMBER    4-1000159**

Policy Term:                          **01/01/2017 to 01/01/2018**
Endorsement Effective Date:          **01/01/2017**
Insured:                              **Valitas Health Services, Inc.**

## POLICY ENDORSEMENT
### Policy Audit

In consideration of the premium charged for this policy and this endorsement, it is hereby understood and agreed, subject to all terms, conditions and exclusions of this policy:

Exposure Audit (Applicable to Policy Aggregate Limit and Aggregate SIR)

Exposure Base:                                    Service Adjusted Annual Average Inmates
Estimated Exposure Base at Policy Inception:      143,591 (see below table for allocation and adjustment factors)

The First Named Insured will provide RRG with the  Audited Service Adjusted Annual Average Inmates  for the  policy period within 30 days after the  end of  the policy period.  The premium will not be adjusted up or down as a result of the exposure audit.

If the Audited Service Adjusted Annual Average Inmates are less than or equal to 143,591, the Total Policy Aggregate Limit and Aggregate SIR will not change.  If the Audited Service Adjusted Annual Average Inmates are in excess of 143,591, the total will be divided by 182,933 and RRG will multiply such quotient by the Total Policy Aggregate Limit and Aggregate Self-Insured Retention to get an adjusted amount.

EXAMPLE: If audited adjusted exposures are175,000, quotient = 175,000/143,591 = 1.22
Total SIR Aggregate $18.5M x1.2 = $22.57M
Total Policy Aggregate Limit $22.57M x $4M = 26.57M

Exposure Service Adjustment Factors and Formulas

| Service Type | Annual Average Inmates ( a ) | Service Type Adjustment ( b ) | Limit Adjustment Factor ( c ) | Adjusted Annual Average Inmates =( a ) x ( b ) x ( c ) |
|---|---|---|---|---|
| Comprehensive | 70,549 | 1.000 | 1.000 | 70,549 |
| Excluding Mental Health | 54,900 | .800 | 1.000 | 43,920 |
| Excluding Physicians | 10,335 | .500 | 1.000 | 5,168 |
| Indemnification  (Rikers) | 0 | .200 | 1.000 | 0 |
| Mental Health Only | 14,771 | .200 | 1.000 | 2,954 |
| Pharmacy Only | 0 | .010 | 1.000 | 0 |
| Physicians Only | 42,000 | .500 | 1.000 | 21,000 |
| Florida DOC (5/31/16 Term) | 0 | 1.000 | .591 | 0 |
| Total | 192,555 | | | 143,591 |

Nothing in this *endorsement* shall be held to amend, vary, extend or waive any of the terms, conditions, exclusions, representations, warranties and/or agreements in *this policy*, any other *endorsement* or any Declarations Page, except as expressly stated in this *endorsement*.

If *this policy* is initially issued with this *endorsement* forming a part thereof at that time and having the same effective date as such policy, or if this *endorsement* is issued together with any renewal or amendatory Declarations Page for *this policy* and having the same effective date as such Declarations Page, then no countersignature on this *endorsement* is necessary.   Otherwise this *endorsement* shall not be valid and binding on the Corporation unless countersigned below by an authorized representative of the Corporation.

This *endorsement* takes effect as of the beginning day and hour for the *policy period* of *this policy* stated in the applicable initial, renewal or amendatory Declarations Page, unless a different *endorsement* effective date is inserted above.

Issue Date:      **12/27/2016**                                Countersigned by:  _____

**AM**                                                                                    Authorized Representative of
                                                                                            Lone Star Alliance Inc., A Risk Retention Group

                                                                                                                                    OCC_LSA_GEN
**OCCURRENCE**                                                                                                            ver 1013

                                    844  595  8866          P.O. Box 160140
                                        lonestara.com          Austin, Texas  78716-0140



## LONE STAR

This endorsement forms a part of

Policy Term:
Endorsement Effective Date:
Insured:

**POLICY NUMBER    4-1000159**

01/01/2017 to 01/01/2018
01/01/2017
**Valitas Health Services, Inc.**

## POLICY ENDORSEMENT
### Minimum Earned Premium

It is understood and agreed that the Premium shown on the DECLARATIONS is a minimum premium and is fully earned at policy inception.

Nothing in this *endorsement* shall be held to amend, vary, extend or waive any of the terms, conditions, exclusions, representations, warranties and/or agreements in *this policy*, any other *endorsement* or any Declarations Page, except as expressly stated in this *endorsement*.

If *this policy* is initially issued with this *endorsement* forming a part thereof at that time and having the same effective date as such policy, or if this *endorsement* is issued together with any renewal or amendatory Declarations Page for *this policy* and having the same effective date as such Declarations Page, then no countersignature on this *endorsement* is necessary.   Otherwise this *endorsement* shall not be valid and binding on the Corporation unless countersigned below by an authorized representative of the Corporation.

This *endorsement* takes effect as of the beginning day and hour for the *policy period* of *this policy* stated in the applicable initial, renewal or amendatory Declarations Page, unless a different *endorsement* effective date is inserted above.

Issue Date:     **12/27/2016**

**AM**

Countersigned by:  _____
                                Authorized Representative of
                    Lone Star Alliance Inc., A Risk Retention Group

**OCCURRENCE**

844 595 8866        P.O. Box 160140
lonestara.com        Austin, Texas 78716-0140

OCC_LSA_GEN
ver 1013



# LONE STAR

This endorsement forms a part of

Policy Term:
Endorsement Effective Date:
Insured:

**POLICY NUMBER    4-1000159**

**01/01/2017 to 01/01/2018**
**01/01/2017**
**Valitas Health Services, Inc.**

## POLICY ENDORSEMENT
### Pennsylvania Physician Coverage

The policy is amended as follows:

With respect to Each **Physician Insured** in the State of Pennsylvania, the Medical Group Professional Liability Limits of Insurance and Self-Insured Retention shown on the DECLARATIONS are deleted in their entirety and replaced with the following:

| Pennsylvania Contracts (Mcare Enrollees) | Limit of Insurance | Self-Insured Retention |
|---|---|---|
| Each **Medical Incident** – Each Mcare Enrolled **Physician Insured** | $ 500,000 | $ 500,000 |
| Each Mcare Enrolled **Physician Insured** Aggregate | $ 1,500,000 | $ 1,500,000 |
| Each **Medical Incident** Aggregate – All **Insureds** Combined | N/A | N/A |

Limits of Insurance and Self-Insured Retention show above apply only if a **Physician Insured** is enrolled in the Pennsylvania Medical Care Availability and Reduction of Error ("Mcare") Fund.

The Total Policy Aggregate Limit shown on the DECLARATIONS does not apply to Mcare Enrolled **Physician Insured** as per the rules of the Mcare Fund.

Nothing in this *endorsement* shall be held to amend, vary, extend or waive any of the terms, conditions, exclusions, representations, warranties and/or agreements in *this policy*, any other *endorsement* or any Declarations Page, except as expressly stated in this *endorsement*.

If *this policy* is initially issued with this *endorsement* forming a part thereof at that time and having the same effective date as such policy, or if this *endorsement* is issued together with any renewal or amendatory Declarations Page for *this policy* and having the same effective date as such Declarations Page, then no countersignature on this *endorsement* is necessary.   Otherwise this *endorsement* shall not be valid and binding on the Corporation unless countersigned below by an authorized representative of the Corporation.

This *endorsement* takes effect as of the beginning day and hour for the *policy period* of *this policy* stated in the applicable initial, renewal or amendatory Declarations Page, unless a different *endorsement* effective date is inserted above.

Issue Date:    **12/27/2016**                                          Countersigned by: _____

                                                                                                        Authorized Representative of
   **AM**                                                                              Lone Star Alliance Inc., A Risk Retention Group



## LONE STAR

This endorsement forms a part of

Policy Term:
Endorsement Effective Date:
Insured:

**POLICY NUMBER   4-1000159**

**01/01/2017 to 01/01/2018**
**01/01/2017**
**Valitas Health Services, Inc.**

## POLICY ENDORSEMENT
### Maximum Aggregate Self-Insured Retention Erosion

The policy is amended as follows:

The maximum amount that the Aggregate Self-Insured Retention shown on the DECLARATIONS shall be eroded by any single **medical incident** is $2,000,000.  Until and unless the Aggregate Self-Insured Retention is exhausted on a paid basis, any payments for damages in excess of $2,000,000 for any single **medical incident** are the responsibility of the **First Named Insured**.

Nothing in this *endorsement* shall be held to amend, vary, extend or waive any of the terms, conditions, exclusions, representations, warranties and/or agreements in *this policy*, any other *endorsement* or any Declarations Page, except as expressly stated in this *endorsement*.

If *this policy* is initially issued with this *endorsement* forming a part thereof at that time and having the same effective date as such policy, or if this *endorsement* is issued together with any renewal or amendatory Declarations Page for *this policy* and having the same effective date as such Declarations Page, then no countersignature on this *endorsement* is necessary.   Otherwise this *endorsement* shall not be valid and binding on the Corporation unless countersigned below by an authorized representative of the Corporation.

This *endorsement* takes effect as of the beginning day and hour for the *policy period* of *this policy* stated in the applicable initial, renewal or amendatory Declarations Page, unless a different *endorsement* effective date is inserted above.

Issue Date:     **12/27/2016**

**AM**

Countersigned by: _____
Authorized Representative of
Lone Star Alliance Inc., A Risk Retention Group

OCC_LSA_GEN
ver 1013

**OCCURRENCE**

844 595 8866
lonestara.com

P.O. Box 160140
Austin, Texas 78716-0140

This endorsement forms a part of

**POLICY NUMBER      4-1000159**


# LONE STAR

Policy Term:
Endorsement Effective Date:
Insured:

**01/01/2017 to 01/01/2018**
**01/01/2017**
**Valitas Health Services, Inc.**

## POLICY ENDORSEMENT
### Polk County Iowa

The policy is amended as follows:

In order to preserve the governmental immunities available as defenses to contractor (or Licensor) and its officials and employees, any insurance policy must contain an endorsement with the following language:

"The Company and the Insured expressly agree and state that the purchase of this policy of insurance by the Insured does not provide coverage for torts specified in Iowa Code 670.4, and that the Insured does not waive any of the defenses of governmental immunity available to the Insured under Iowa Code 670.4 as it now exists and as it may be amended from time to time. The Company and the Insured further expressly agree and state that the Insured may, at any time, assert any of the governmental immunity defenses available to it without affecting the coverage afforded under this policy."

Nothing in this *endorsement* shall be held to amend, vary, extend or waive any of the terms, conditions, exclusions, representations, warranties and/or agreements in *this policy*, any other *endorsement* or any Declarations Page, except as expressly stated in this *endorsement*.

If *this policy* is initially issued with this *endorsement* forming a part thereof at that time and having the same effective date as such policy, or if this *endorsement* is issued together with any renewal or amendatory Declarations Page for *this policy* and having the same effective date as such Declarations Page, then no countersignature on this *endorsement* is necessary.   Otherwise this *endorsement* shall not be valid and binding on the Corporation unless countersigned below by an authorized representative of the Corporation.

This *endorsement* takes effect as of the beginning day and hour for the *policy period* of *this policy* stated in the applicable initial, renewal or amendatory Declarations Page, unless a different *endorsement* effective date is inserted above.

Issue Date:      **12/27/2016**

**AM**

Countersigned by:  _____
Authorized Representative of
Lone Star Alliance Inc., A Risk Retention Group

OCC_LSA_GEN
ver 1013

**OCCURRENCE**

844 595 8866
lonestara.com

P.O. Box 160140
Austin, Texas 78716-0140

# LONE STAR



# SELF-ADMINISTRATION OF CLAIMS AND INDEMNITY AGREEMENT

THIS SELF-ADMINISTRATION OF CLAIMS AND INDEMNITY AGREEMENT (the "Agreement"), is made and entered into by and between CORIZON HEALTH, a Delaware corporation with offices located in Brentwood, Tennessee (the "Insured") and LONE STAR ALLIANCE, INC., A RISK RETENTION GROUP (the "Insurer"), effective as of January 1, 2016 (the "Effective Date").

WHEREAS, the "Insurer" has, commencing with calendar year 2016, issued a policy of healthcare professional liability insurance to the "Insured" with a commencement date of January 1, 2016, (the "Policy"); and

WHEREAS, the Policy imposes a duty on the "Insurer" to reimburse the insured for indemnity payments for covered "Claims" and occurrences subject to the "Self-Insured Retention" ("SIR") and the Policy coverage limits; and

WHEREAS, the "Insured", as of the "Effective Date", desires to self-administer claims handling services; and

WHEREAS, the Policy (i) imposes upon the "Insured" the duty to defend and reimburse covered "Claims", occurrences and suits open or reported on or after the "Effective Date" and (ii) requires the "Insurer" to reimburse only indemnity payments pertaining to such "Claims", occurrences and suits in excess of the SIR which shall only be eroded by the payment of settlements or judgments, but not Allocated Loss Expenses ("LAE") in accordance with the Policy's terms, provisions and coverage limits; and

WHEREAS, the "Insured" shall perform claim services subject to the terms, conditions and restrictions contained in this "Agreement", the Policy, and otherwise in a professional manner and in accordance with all applicable laws and regulations.

NOW, THEREFORE, in exchange for the mutual covenants contained in this "Agreement" and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

ARTICLE I - TERM

Commencing on the "Effective Date", unless otherwise terminated as provided herein, the "Insured" agrees to perform all services agreed to herein in connection with "Claims", occurrences and suits covered by the Policy.

1

ARTICLE II - CERTAIN DEFINITIONS

A.      "Loss Adjustment Expense" shall mean any cost, fee or expense reasonably chargeable to the investigation, negotiation, settlement or defense of a "Claim" or alleged loss or to the protection or perfection of the subrogation rights of the "Insurer" and/or the "Insured";

B.      "Claim" shall mean any "Claim" or occurrence which (i) involves an actual or alleged loss resulting from an allegedly covered peril under the Policy, and (ii) is reported on or after the "Effective Date".

C.      "Claims Administration Services" shall mean and include, but not limited to, the following services in compliance with the terms of the Policy and all applicable laws and regulations:

1. paying all "Claims" that involve actual loss and Allocated "Loss Adjustment Expenses" on a timely basis;

2. reviewing all "Claims", complying with "Claim" reporting requirements of the Policy, and preparing loss reports;

3. establishing a "Claim" file for each "Claim" and maintaining all "Claim" data necessary for proper "Claims" administration, including assessment and confirmation of coverage for allegations made and relief sought for each "Claim";

4. conducting an investigation of each "Claim" to the extent deemed necessary and appropriate in accordance with industry standards;

5. providing the "Insurer", upon request with periodic detailed narrative reports on the status of each "Claim"; and

6. adjusting, compromising, settling or resisting "Claims" in accordance with applicable Policy coverage and within the Self Insured Retention.

D.      "Self-Insured Retention" shall mean the payments made the responsibility of the "Insured" as set forth in the Policy.


ARTICLE III - OBLIGATIONS OF THE INSURED

A.      The "Insured" shall keep complete and accurate records of its "Claims Administration Services" and disposition of "Claims". The "Insured" will permit the "Insurer", at its sole discretion, to review or audit such of the "Insured's" books, records and files as pertain to "Claims Administration Services", "Claims", and any financial information pertaining to reserves and projections prepared by the "Insured" in accordance with this "Agreement" hereto upon 10 business days' prior written notice. Upon the "Insurer's" request for a review or audit, the "Insured" agrees to make such of its books, records and files available for review during regular business hours at the place or places of business where such books, records and files are regularly maintained by the "Insured".

B.      The "Insured" shall prepare and submit to the "Insurer" reports, loss runs and other statistical information and data pertaining to "Claims" as may reasonably be requested by the "Insurer".

2

Notwithstanding the preceding sentence, the "Insured" shall prepare and submit a loss run report and a Loss Fund activity report pertaining to "Claims" on a monthly basis. Each loss run report shall consist of a listing of "Claims" that have been posted by the "Insured". If requested by the "Insurer", the loss run reports shall consist of computer generated listings, including posting dates, and shall be submitted to the "Insurer" by a mutually agreed upon electronic format. The "Insured" shall provide as many copies of reports submitted pursuant to this section as the "Insurer" may reasonably request and shall abide such other specific written instructions for such reports as the "Insurer" may reasonably require, including but not limited to categorizing "Claims" by cause.

C.      The "Insured" agrees to promptly reimburse the "Insurer" for all fines and penalties paid by the "Insurer" may have paid or be required to pay as a result of the "Insured's" actions.

## ARTICLE IV - LIMITATION OF INSURED'S AUTHORITY

In addition to any other limitations expressly or impliedly contained in this "Agreement", any exhibit or addendum hereto, or any instruction which may be issued in writing from time to time by the "Insurer" to the "Insured", the "Insured" shall have no authority to do, nor shall it represent itself as having authority to do, nor shall it do, any of the following:

1. Make any agreements rendering or purporting to render the "Insurer" liable for the payment or repayment of expenses, commissions, administrative fees, or service fees, or any other sum, other than validly authorized "Claims" payments;

2. Conduct "Claims Administration Services" or settle or pay "Claims" in contravention of any instructions issued by the "Insurer";

3. Withhold any monies or property of or owing to the "Insurer";

4. Bind, subject, or obligate the "Insurer" to any liability in excess of the Discretionary Settlement Authority Limit, unless specifically authorized to do so in writing by the "Insurer";

5. Engage any attorney to represent the "Insurer" for any purpose whatsoever without the "Insurer's" prior written approval, except in a direct-action state in defense of a "Claim";

6. Make any payments for extra-contractual damages or ex gratia payments on behalf of the "Insurer" without the "Insurer's" prior written approval; nor

7. Represent by any means or purported agreement that the "Insurer" will (i) make any indemnity payment prior to the exhaustion of the SIR by means of settlements or judgments or (ii) make any defense or indemnity payment in the event of the "Insured's" bankruptcy or other insolvency, or if the "Insured" is unable to pay the SIR for any reason whatsoever.

## ARTICLE V - INDEMNIFICATION

The "Insured" agrees to indemnify, defend, and hold harmless the "Insurer", its parent, subsidiaries and affiliates and their respective directors, officers, employees and agents from and against

3

any and all liabilities, "Claims", suits, actions, demands, settlements, losses, judgments, costs, damages, expenses (including reasonable attorneys' fees), fines, penalties, including punitive or exemplary damages and all costs of defense (collectively, "Losses") arising out of or resulting from (i) any act or omission, whether intentional or unintentional, by the "Insured" or its officers, directors, employees or sub-administrators, related to or arising out of the "Insured's" performance of "Claims Administration Services" or any other act or omission relating to or arising from the handling and disposition of "Claims", (including, without limitation, any failure of the "Insured" to comply with local, state or federal laws or regulations applicable to the performance of "Claims Administration Services", including licensing and "Claim" reporting requirements, or to pay "Claims" in good faith and in accordance with the provisions of the Policy) or (ii) a breach by the "Insured" of any of its representations, warranties, obligations or covenants contained in this "Agreement" (including, without limitation, any failure of the "Insured" to comply with applicable local, state or federal laws or regulations applicable to the use and disclosure of Nonpublic Personal Information).

## ARTICLE VII - NOTICES

All notices and other communications required or permitted to be given under this "Agreement" (other than notices and other communications for which specific notice instructions are provided by the "Insurer" to the "Insured" with respect to "Claim" matters) shall be in writing and shall be deemed to have been duly given on the date delivered by hand, by overnight courier service or by messenger, or upon receipt by facsimile transmission, or upon delivery by registered or certified mail (return receipt requested) postage prepaid, to any party at the following addresses and facsimile numbers:

If to the "Insured":

Corizon Health
Corporate Office
103 Powell Court
Brentwood, TN 37027

If to the Insurer:

Lone Star Alliance, Inc., a Risk Retention Group
P. O. Box 160140
Austin, Texas 78716-0140
Telephone: (512) 425-5800
Facsimile: (512) 328-8067
Attn.: Vice President - Claims

Any party may change the address or facsimile number to which notices are to be sent by providing written notice of such change, such notice to be effective upon receipt only.

## ARTICLE VIII - TERMINATION

4

A.      Either party hereto will have the right at any time to terminate this "Agreement" by written notice sent in accordance with Article XI specifying the "Effective Date" of termination, which shall not be less than sixty (60) days thereafter.

B.      This "Agreement" may be terminated immediately at the "Insurer's" option in the event that any license the "Insured" utilizes to fulfill the requirements of this "Agreement" is suspended for any reason, ((ii) the "Insured" performs its services hereunder in such a manner as to subject the "Insurer" to the unnecessary risk of loss or liability; (iii) the "Insured" has committed a fraudulent act or illegal conduct; (iv) there is a sale, transfer or merger involving all or a substantial portion of the "Insured's" business; (v) there exists a violation by the "Insured" (or any person for whom the "Insured" may be responsible) of any provision, term or condition of this "Agreement". The "Insurer" may, with respect to subclause; (v), permit the "Insured" to rectify such breach, non-performance, or violation within ten (10) days after written notice from the "Insurer"

C.      Any termination of this "Agreement" will not affect the rights and obligations of the parties hereto as to transactions, acts or things done by either party prior to the "Effective Date" of termination,

D.      Upon termination of this "Agreement", unless otherwise agreed to in writing by the "Insurer", the "Insured" will account to the "Insurer" for all transactions unaccounted for at the time of termination or arising thereafter with respect to services covered by this "Agreement".

E.      If this "Agreement" is terminated or not renewed, the "Insurer" may exercise one of the following options:

1. the "Insurer" may require the "Insured" to complete the handling of all "Claims" arising prior to the date of notice of termination of this "Agreement", in which case adequate funds shall continue to be made available by the "Insurer" to the "Insured" for the payment of "Claims" and Allocated "Loss Adjustment Expense" until all "Claims" are closed; or
2. the "Insurer" may require the "Insured" to transfer all open and closed files to the "Insurer" or to a designated facility for future handling.

Either upon the "Insurer's" election of the termination option specified in subparagraph 2, above, or upon the date that all "Claims" are closed, as applicable, the "Insured" shall deliver to the "Insurer" all "Claim" files that are in the "Insured's" possession or control. The "Insured" shall bear all costs and expenses incurred by the "Insurer" relating to such transfer, and upon written demand shall promptly reimburse the "Insurer" for such costs and expenses

G.      Notwithstanding any termination of this "Agreement", the "Insured" will not be released from its obligations until all "Claims" are closed including, without limitation, its obligation to provide "Claims Administration Services" with respect to "Claims" (unless the "Insurer" elects the termination option in paragraph E.2 above), or any other of its obligations under provisions of this "Agreement" that shall survive termination.

ARTICLE IX - ASSIGNMENTS: SUCCESSORS: NO THIRD PARTY RIGHTS

None of the parties hereto may assign any of such party's rights under this "Agreement" (including by merger or other operation of law) without the prior written consent of the other parties hereto (which may not be unreasonably withheld or delayed) and any purported assignment without such consent shall be void, except that the "Insured" hereby agrees that the "Insurer" may assign all of its rights and obligations under this "Agreement" to an affiliate or to any entity that may acquire substantially all of the stock or assets of the "Insurer" or its parent corporation. Subject to the foregoing, this "Agreement" and all of the provisions hereof shall apply to, be binding upon, and inure to the benefit of the parties hereto and their successors and permitted assigns.

## ARTICLE X - GOVERNING LAW

THIS "AGREEMENT" SHALL BE DEEMED TO BE MADE IN, AND IN ALL RESPECTS SHALL BE INTERPRETED, CONSTRUED AND GOVERNED BY AND IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS WITHOUT GIVING EFFECT TO ANY CONFLICT OF LAWS PRINCIPLES THAT WOULD CAUSE THE APPLICATION OF THE LAWS OF ANY OTHER JURISDICTION.

## ARTICLE XI - COUNTERPARTS

For the convenience of the parties hereto, this "Agreement" may be executed in any number of counterparts, each such counterpart being deemed to be an original instrument, and all such counterparts shall together constitute the same agreement.

IN WITNESS WHEREOF, the parties hereto have caused this "Agreement" to be executed by their duly authorized representatives.

Insured:
CORIZON HEALTH
By:_____

Printed Name:_____

Title:_____

Date:_____


Insurer:

LONE STAR ALLIANCE, INC., A RISK RETENTION GROUP
By:_____
Printed Name:____Susan Mills_____
Title:_____Secretary_____
Date:_____12/27/2016_____

6

# LONE STAR



## MEDICAL GROUP COVERAGE
## GENERAL POLICY PROVISIONS AND CONDITIONS
## APPLICABLE TO ALL COVERAGE PARTS

**NOTICE: VARIOUS PROVISIONS IN THE GENERAL POLICY PROVISIONS AND CONDITIONS AND COVERAGE PARTS RESTRICT COVERAGE. PLEASE READ ALL GENERAL POLICY PROVISIONS AND CONDITIONS AND COVERAGE PARTS CAREFULLY TO DETERMINE YOUR RIGHTS, DUTIES, AND WHAT IS AND WHAT IS NOT COVERED. A COMPLETE POLICY INCLUDES THE DECLARATIONS, GENERAL POLICY PROVISIONS AND CONDITIONS, AND THE APPLICABLE COVERAGE PARTS.**

Throughout this policy the words **you** and **your** mean the **First Named Insured**, including any other Named Insured. The words **we**, **us** and **our** mean the Company providing insurance under this policy. Other words and phrases are defined in Section I. DEFINITIONS APPLICABLE TO GENERAL POLICY PROVISIONS AND CONDITIONS AND ALL COVERAGE PARTS. Further, words that appear in the GENERAL POLICY PROVISIONS AND CONDITIONS may be defined in other Coverage Parts forming part of this policy.

In consideration of the payment of the premium and in reliance upon the statements in the Application and upon the Declarations, **we** agree as follows:

| |
|---|
| *I.   DEFININTIONS APPLICABLE TO GENERAL POLICY PROVISIONS AND CONDITIONS AND ALL COVERAGE PARTS* |

    A.    **Auto** means a land motor vehicle, trailer, or semitrailer designed for travel on public roads, including any attached machinery or equipment. **Auto**, however, does not include **mobile equipment**.

    B.    **Biomedical Waste** means a biological agent or condition including, but not limited to, an infectious organism or unsafe laboratory condition that may cause or result in **bodily injury** or property damage.

    C.    **Bodily injury** means physical injury, sickness or disease sustained by any person, including death resulting from any of these at any time. **Bodily injury** does not include emotional distress or mental anguish unless due to physical injury, sickness or disease.

    D.    **Claim** means:
        1.    A written demand against an Insured for monetary damages, including a **suit**.
        2.    Written notice to **us** regarding a **medical incident** or **occurrence** which may reasonably be expected to give rise to a written demand against an Insured for monetary damages.

1

E.   **Defense Costs** means the cost incurred in connection with the investigation and/or defense of any **claim** or **suit** brought against any Insured including, but not limited to, legal fees and other defense expenses.

F.   **Employee** means a person paid by **you** in connection with **your** business.  It includes a **leased worker** or **temporary worker**.

G.   **Executive Officer** means a person holding any of the officer positions created by **your** charter, constitution, by-laws or any other similar governing document.

H.   **First Named Insured** means the Named Insured designated first on the Declarations attached to this policy.

I.   **Insured Contract** means:
1.   A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to **you** or temporarily occupied by **you** with permission of the owner is not an **insured contract**;
2.   A sidetrack agreement;
3.   Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;
4.   An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;
5.   An elevator maintenance agreement; or
6.   That part of any other contract or agreement pertaining to **your** business (including an indemnification of a municipality in connection with work performed for a municipality) under which **you** assume the tort liability of another party to pay for **bodily injury** or property damage to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.
     Paragraph 6. does not include that part of any contract or agreement:
a.   That indemnifies a railroad for **bodily injury** or property damage arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;
b.   That indemnifies an architect, engineer or surveyor for injury or damage arising out of:
     i.   Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings, designs and specifications; or
     II.  Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

2

III.    Under which **you**, if an architect, engineer or surveyor, assumes liability for **bodily injury** or property damage arising out of **your** rendering or failure to render **professional services**, including those listed in b. above and supervisory, inspection, architectural or engineering activities.

J.    **Leased Worker** means a person leased to **you** by a labor leasing firm, under an agreement between **you** and the labor leasing firm, to perform duties related to the operations as described in the Declarations and which are at **your** direction. **Leased worker** does not include a **temporary worker.**

K.    **Loading** or **Unloading** means the handling of property:
1. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or **auto**; or
2. While it is in or on an aircraft, watercraft or **auto**; or
3. While it is being moved from an aircraft, watercraft or **auto** to the place where it is finally delivered;

But **loading** or **unloading** does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft, or **auto**.

L.    **Locum Tenens** means a physician, surgeon or other healthcare professional who is temporarily serving as a relief or substitute physician, surgeon or healthcare professional for a **Physician insured** or Insured healthcare professional.

M.    **Medical Incident** means any act, error or omission in the providing of or failure to provide **professional services** to any one **patient.**

All damages arising from any act, error or omission in the providing of or failure to provide **professional services** to a woman and/or her unborn child or children during the course of a pregnancy (including pre-natal, delivery and post-natal care) will be deemed to be a single **medical incident.**

**Medical incident** includes allegations of Civil Rights Violations by a **patient**, provided that, such allegations arise out of the providing of or failure to provide **professional services.**

N.    **Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment and including, but not limited to:
1. Bulldozers, farm machinery, forklifts, and other vehicles designed for use principally off public roads;
2. Vehicles maintained for use solely on or next to premises **you** own or rent;
3. Vehicles that travel on crawler treads;
4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:
   a. Power cranes, shovels, loaders, diggers or drills; or

3

        b.   Road construction or resurfacing equipment such as graders, scrapers or rollers;

5.     Vehicles other than those described in Items 1, 2, 3, or 4 above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        a.   Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

        b.   Cherry pickers and similar devices used to raise or lower workers;

6.     Vehicles other than those described in Items 1, 2, 3, or 4 above that are maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not **mobile equipment** but will be considered **autos**:

        a.   Equipment designed primarily for:

           I.      Snow removal;

           II.     Road maintenance, but not construction or resurfacing; or

           III.    Street cleaning;

        b.   Cherry pickers and similar devices mounted on **auto** or truck chassis and used to raise or lower workers; and

        c.   Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**O.**    **Occurrence** means:

1.     As respects **bodily injury**, property damage or medical expense, an accident, including continuous or repeated exposure to substantially the same general conditions, which results in **bodily injury** or property damage neither expected nor intended from the standpoint of the Insured. All such exposure to substantially the same general conditions shall be considered as arising out of one **occurrence**.

2.     As respects personal injury, an offense arising out of **your** business that results in personal injury. All damages that arise from the same or related injurious material or act shall be considered as arising out of one **occurrence**, regardless of the frequency of repetition thereof, the number and kind of media used and the number of claimants.

**P.**    **Patient** means a person seeking or receiving, either on an inpatient, outpatient or emergency basis, any form of medical, surgical, dental or nursing care or any service or treatment.

**Q.**    **Physician Insured** or **Physician Insureds** means a physician, employed by or under contract or agreement with a Named Insured, while acting within the scope of that person's duties as such in rendering **professional services** in accordance with the scope of their duties for the Named Insured.

**R.**    **Policy Period** means the period commencing on the inception date shown on the Declarations and ending on the earlier of the expiration date or the effective date of cancellation of the policy.

4

**S.**    **Pollutants** means any solid, liquid, gaseous, or thermal irritant or contaminant, including, but not limited to: smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes, but is not limited to, **biomedical waste** and materials to be recycled, reconditioned or reclaimed.

**T.**    **Professional Services** means:

1.   Medical, surgical, dental, nursing or other health care services including but not limited to the furnishing of food or beverages in connection with such services; the practice of nuclear medicine; the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances; or the handling or treatment of deceased human bodies, including, but not limited to, autopsies, organ donation or other procedures;

2.   Services by any person as a member of a formal accreditation, standards review or similar professional board or committee of any Insured; or

3.   Services by any person as a member of any committee of any licensed hospital or other healthcare facility, professional medical association or society or of a legally constituted professional standards review organization when at **your** request.

4.   Supervising, teaching, proctoring others at **your** request.

**U.**    **Suit** means a civil action in which damages are alleged because of an **occurrence**, **claim**, **medical incident, bodily injury, property damage, personal injury and advertising injury** to which this insurance applies. **Suit** includes:

1.   An arbitration proceeding in which such damages are claimed and to which an Insured must submit or does submit with **our** consent; or

2.   Any other alternative dispute resolution proceeding in which such damages are claimed and to which an Insured submits with **our** consent.

**V.**    **Temporary Worker** means a person who is furnished to **you** to substitute for a permanent **employee** on leave or to meet seasonal or short-term work load requirements.

| II. CONDITIONS APPLICABLE TO ALL COVERAGE PARTS |
|---|

The following conditions apply to all Coverage Parts:

**A.**    Assistance and Cooperation

The Insured shall assist **us**, upon **our** request, in the enforcement of any right against any person or organization which may be liable to the Insured because of injury or damage to which this insurance may also apply.

**B.**    Audit

**We** may audit and examine **your** books and records as they relate to this policy at any time during the period of this policy and for up to three years after the expiration or termination of this policy.

5

**C.**   Changes

Notice to any agent or knowledge possessed by any agent or any other person will not affect a waiver or a change in any part of this policy. This policy can only be changed by a written endorsement that becomes a part of this policy and that is signed by one of **our** authorized representatives.

**D.**   Coverage Territory

**We** will cover an **occurrence**, **medical incident** or offense, in the United States of America, its territories and possessions, Canada and Puerto Rico, provided a **claim** is made or **suit** is brought in the United States of America, its territories and possessions, Canada or Puerto Rico.

**E.**   Mergers/Acquisitions

**We** will cover any organization **you** newly acquire or form, other than a partnership, joint venture or limited liability company, and over which **you** maintain ownership or at least a majority interest, only for sixty (60) days or for the remainder of the **policy period**, whichever is less, from the date that **you** acquire or form it. **You** are not covered for damages that arise out of **bodily injury**, property damage, or **medical incidents** that occurred before **you** acquired or formed the organization, or personal and advertising injury arising out of an **occurrence** which took place before **you** acquired or formed the organization.

If any person or organization became an additional Named Insured under this policy after the inception date, the **policy period** for that person or organization begins on the date that such person or organization became an additional Named Insured and ends on the earlier of the expiration date or the effective date of cancellation of the policy.

**F.**   Legal Action Against Us

No person or organization has a right under this Policy:

1.   To join **us** as a party or otherwise bring **us** into a **suit** asking for damages from **you**; or

2.   To sue **us** under this policy, unless all this policy's terms have been complied with in full.

A person or organization may sue **us** to recover on an agreed settlement or on a final judgment against **you** obtained after an actual trial; but **we** will not be liable for damages that are not payable under the terms of any Insuring Agreement or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by **us**, **you** and the claimant or the claimant's legal representative.

**G.**   Other Insurance

If the **First Named Insured** has elected by written contract to provide primary and non-contributory insurance to any Insured, then this insurance shall be primary and non-contributory insurance with respect to any **claim** or **suit** for which coverage is provided under this Policy to such Insured.

6

However, in the event an Insured has Healthcare or Malpractice Professional Liability Insurance in force at the time of a loss which provides coverage for a **claim** or **suit** for which coverage would also be provided to such Insured by this Policy and the Insured has elected in writing to provide his/her own coverage for work on behalf of a Named Insured, then this Policy will not provide coverage on any basis, including, but not limited to, providing coverage on a primary, excess, or contingent basis for such Insured.

With respect to all other Insureds, this insurance shall be primary insurance. If, with respect to such other Insureds, this insurance is primary, **our** obligations are not affected unless other insurance, pertaining to such other Insureds, is also primary. In such case, this insurance will share with such other insurance either:

1.   by each insurer contributing equal shares until it has paid its limit of insurance or none of the loss remains or

2.   based upon the ratio of **our** applicable limit of insurance to the total applicable limits of insurance of all insurers, whichever is determined to be applicable by agreement between the insurers or, if no agreement can be reached, by a court.

     A Self-Insured Trust Plan or other Self-Insured Plan will be treated as other insurance for the purpose of applying these provisions.

H.   Separation of Insureds
     Except with respect to the Limits of Insurance and deductible, and except with respect to any rights or duties specifically assigned in this policy to the Named Insured, this insurance applies: As if each Insured were the only Insured; and Separately to each Insured against whom a **claim** is made or **suit** is brought.

I.   Bankruptcy/Insolvency
     **Your** bankruptcy or insolvency will not relieve **us** of **our** obligations under this policy, subject to the provisions of the policy Self-Insured Retention Endorsement.

J.   Representations
     By accepting this policy, the **First Named Insured** agrees that:
     1.   The statements in the Declarations and/or Applications are accurate and complete;
     2.   Those statements are based upon representations made to **us** by **you**; and
     3.   **We** have issued this policy in reliance upon **your** representations.

K.   Notice
     The **First Named Insured** is the appointed and irrevocable agent for all Named Insureds, including, for the purpose of receipt of any notice of cancellation, notice of nonrenewal (if applicable), and the payment or return of any premium under this policy.

7

L.    Special Rights and Duties of First Named Insured

It is agreed by all Insures that the **First Named Insured** is authorized to act on behalf of all Insureds as to:

1.    Payment of premiums and receipt of return premiums;

2.    Acceptance of any endorsements to this policy;

3.    Making changes in this policy or any coverage part with **our** consent;

4.    Making representations with respect to the issuance by **us** of this policy;

5.    Settling all **claims** or **suits** on behalf of any Insured.

6.    This policy can only be changed by a written endorsement **we** issue and make a part of this policy.

M.    Punitive Damages

Coverage provided by this policy includes punitive and/or exemplary damages if insurable under the law of the applicable jurisdiction.

N.    Titles of Paragraphs

Titles of paragraphs are inserted solely for convenience of reference and shall not be deemed to limit, expand or otherwise affect the provisions to which they relate.

IN WITNESS WHEREOF, the Risk Retention Group identified on the Declarations has caused this policy to be signed by its President, Secretary and duly authorized representative of the Risk Retention Group.

|                          |                          |
|--------------------------|--------------------------|
| PRESIDENT                | SECRETARY                |

REVIEWED BY: sean-coughlin ON: 6/2/2017 9:52 AM
emailed to agent by sean-coughlin on 6/2/2017 9:52AM



## LONE STAR ALLIANCE
### A RISK RETENTION GROUP

This *endorsement* forms a part of

*Policy Term:*
*Endorsement* Effective Date:
*Insured:*

**POLICY NUMBER**   4-100159

01/01/2017 to 01/01/2018
01/01/2017
**Valitas Health Services, Inc.**

## POLICY ENDORSEMENT
### Additional Insured

In consideration of the premium charged for *this policy* and this *endorsement*, it is hereby understood and agreed, subject to all terms, conditions and exclusions of *this policy* that the parties listed below are included as Additional *insureds*:

| Additional *insured(s)* | Effective Date(s) | Termination Date(s) |
|---|---|---|
| America Service Group, Inc. | 01/01/2017 | |
| CHS Medical Services P.C. | 01/01/2017 | |
| Comprehensive Correctional Care, P.C. (fka PHS Medical Corporation) | 01/01/2017 | |
| Corizon Health Clinical Solutions, LLC | 01/01/2017 | |
| Corizon Health of New Jersey, LLC (fka Correctional Health Services, Inc.) | 01/01/2017 | |
| Corizon Health, Inc. (fka America Service Group, Inc.) | 01/01/2017 | |
| Corizon, Inc. (fka Correctional Medical Services, Inc.) | 01/01/2017 | |
| Corizon, LLC | 01/01/2017 | |
| Correctional Dental Associates of Alabama, PC | 01/01/2017 | |
| Correctional Dental Associates of Arkansas, PA | 01/01/2017 | |
| Correctional Dental Associates of New York, P.C. (fka PHS Dental Services, P.C.) | 01/01/2017 | |
| Correctional Health Services, Inc. | 01/01/2017 | |
| Correctional Health Services, LLC | 01/01/2017 | |
| Correctional Healthcare Associates of Kansas, PA | 01/01/2017 | |
| Correctional Medical Associates of Greater New York, PC | 01/01/2017 | |
| Correctional Medical Associates of New York, P.C. (fka PHS Medical Services, P.C.) | 01/01/2017 | |
| Correctional Medical Services of Delaware, Inc. | 01/01/2017 | |
| Correctional Medical Services of Illinois, Inc. | 01/01/2017 | |
| Correctional Medical Services, Inc., a Missouri Corporation | 01/01/2017 | |
| Correctional Physician Associates of Arkansas, PA | 01/01/2017 | |
| EMSA Correctional Care, Inc. | 01/01/2017 | |
| EMSA Government Services, Inc. | 01/01/2017 | |
| EMSA Limited Partnership | 01/01/2017 | |
| EMSA Military Services, Inc. | 01/01/2017 | |
| Genesis Behavioral Services, Inc. | 01/01/2017 | |
| Ivor Garlick, MD PC and Correctional Dental Associates | 01/01/2017 | |
| PHS of Michigan, PC | 01/01/2017 | |
| PHS Community Care, LLC | 01/01/2017 | |
| PHS Dental Services, PC | 01/01/2017 | |
| PHS Medical Corporation | 01/01/2017 | |

OCCURRENCE

LSA_52A
ver 0414

| | |
|---|---|
| **PHS Medical Services, P.C.** | 01/01/2017 |
| **PHS Professional Medical Service, PSC** | 01/01/2017 |
| **PHS Professional Medical Services, P.C.** | 01/01/2017 |
| **PHS Regional Medical, PC** | 01/01/2017 |
| **PHS of Kansas, P.A.** | 01/01/2017 |
| **PHS of North Carolina Medical Services, PC** | 01/01/2017 |
| **PharmaCorr, LLC, a Delaware Limited Liability Company** | 01/01/2017 |
| **Prison Health Services of Indiana, LLC** | 01/01/2017 |
| **Prison Health Services, Inc.** | 01/01/2017 |
| **Prison Medical, P.A** | 01/01/2017 |
| **Quality Correctional Care of Michigan, PC** | 01/01/2017 |
| **Quality Correctional Care of New Jersey, P.C. (fka CHS Medical Services, P.C.)** | 01/01/2017 |
| **Quality Correctional Care of Tennessee, P.C. (fka PHS Professional Medical Services, P.C.)** | 01/01/2017 |
| **Quality Correctional Dental Care of Michigan, PC** | 01/01/2017 |
| **Saavedra, M.D., PHS of Nevada Medical Services, P.C.** | 01/01/2017 |
| **Valitas Behavioral Services of Delaware, Inc.** | 01/01/2017 |
| **Valitas Behavioral Services, Inc.** | 01/01/2017 |
| **Valitas Equity LLC** | 01/01/2017 |
| **Valitas Health Services, Inc.** | 01/01/2017 |
| **Valitas Holdings, Inc.** | 04/14/2017 |
| **Valitas Intermediate Holdings, Inc.** | 04/14/2017 |
| **Valitas, Inc.** | 01/01/2017 |
| **Young S. Kim, M.D. P.C. dba PHS of IL Medical Services** | 01/01/2017 |

Additional *insureds* and the *Named Insured* or other *insured* listed above will share the "each *claim*" and "all *claims*" limits of liability for all *claims* arising out of the same *insured incident*. There shall be no additional limits of liability available to Additional *insureds*.

Coverage for additional *insureds* is limited to *claims* arising out of professional services performed by an individual or entity shown on the Declarations Page, Schedule of Insureds or applicable *endorsement*.

In no event shall the Corportation be liable under this policy for more than the limits of liability stated in the Declarations Page, Schedule of Insureds or applicable *endorsement* of *this policy*.

Nothing in this *endorsement* shall be held to amend, vary, extend or waive any of the terms, conditions, exclusions, representations, warranties and/or agreements in *this policy*, any other *endorsement* or any Declarations Page, except as expressly stated in this *endorsement*.

If *this policy* is initially issued with this *endorsement* forming a part thereof at that time and having the same effective date as such policy, or if this *endorsement* is issued together with any renewal or amendatory Declarations Page for *this policy* and having the same effective date as such Declarations Page, then no countersignature on this *endorsement* is necessary. Otherwise this *endorsement* shall not be valid and binding on the Corporation unless countersigned below by an authorized representative of the Corporation.

This *endorsement* takes effect as of the beginning day and hour for the *policy period* of *this policy* stated in the applicable initial, renewal or amendatory Declarations Page, unless a different *endorsement* effective date is inserted above.

Issue Date:   **06/02/2017**            Countersigned by:

**AM**

_____
Authorized Representative of
Lone Star Alliance Inc., A Risk Retention Group

LSA_52A
ver 0414

**OCCURRENCE**


LONE STAR
ALLIANCE
A RISK RETENTION GROUP

This *endorsement* forms a part of

*Endorsement* Effective Date:
*Policy Term*:
*Insured*:

**POLICY NUMBER   4-100159**

**01/01/2017 to 01/01/2018**
**01/01/2017**
**Valitas Health Services, Inc.**

## POLICY ENDORSEMENT
### Additional Insured

In consideration of the premium charged for *this policy* and this *endorsement*, it is hereby understood and agreed, subject to all terms, conditions and exclusions of *this policy* that the parties listed below are included as Additional *insureds*:

| Additional *insured(s)* | Effective Date(s) | Termination Date(s) |
|---|---|---|
| America Service Group, Inc. | 01/01/2017 | |
| CHS Medical Services P.C. | 01/01/2017 | |
| Comprehensive Correctional Care, P.C. (fka PHS Medical Corporation) | 01/01/2017 | |
| Corizon Health of New Jersey, LLC (fka Correctional Health Services, Inc.) | 01/01/2017 | |
| Corizon Health, Inc. (fka America Service Group, Inc.) | 01/01/2017 | |
| Corizon, Inc. (fka Correctional Medical Services, Inc.) | 01/01/2017 | |
| Corizon, LLC | 01/01/2017 | |
| Correctional Dental Associates of Alabama, PC | 01/01/2017 | |
| Correctional Dental Associates of Arkansas, PA | 01/01/2017 | |
| Correctional Dental Associates of New York, P.C. (fka PHS Dental Services, P.C.) | 01/01/2017 | |
| Correctional Health Services, Inc. | 01/01/2017 | |
| Correctional Health Services, LLC | 01/01/2017 | |
| Correctional Healthcare Associates of Kansas, PA | 01/01/2017 | |
| Correctional Medical Associates of Greater New York, PC | 01/01/2017 | |
| Correctional Medical Associates of New York, P.C. (fka PHS Medical Services, P.C.) | 01/01/2017 | |
| Correctional Medical Services of Delaware, Inc. | 01/01/2017 | |
| Correctional Medical Services of Illinois, Inc. | 01/01/2017 | |
| Correctional Medical Services, Inc., a Missouri Corporation | 01/01/2017 | |
| Correctional Physician Associates of Arkansas, PA | 01/01/2017 | |
| Cortland Capital Market Services, LLC | 01/01/2017 | |
| EMSA Correctional Care, Inc. | 01/01/2017 | |
| EMSA Government Services, Inc. | 01/01/2017 | |
| EMSA Limited Partnership | 01/01/2017 | |
| EMSA Military Services, Inc. | 01/01/2017 | |
| Genesis Behavioral Services, Inc. | 01/01/2017 | |
| Ivor Garlick, MD PC and Correctional Dental Associates PHS of Michigan, PC | 01/01/2017 | |
| PHS Community Care, LLC | 01/01/2017 | |
| PHS Dental Services, PC | 01/01/2017 | |
| PHS Medical Corporation | 01/01/2017 | |
| PHS Medical Services, P.C. | 01/01/2017 | |

**OCCURRENCE**

LSA_52A
ver 0414

| | |
|---|---|
| **PHS Professional Medical Service, PSC** | 01/01/2017 |
| **PHS Professional Medical Services, P.C.** | 01/01/2017 |
| **PHS Regional Medical, PC** | 01/01/2017 |
| **PHS of Kansas, P.A.** | 01/01/2017 |
| **PHS of North Carolina Medical Services, PC** | 01/01/2017 |
| **PharmaCorr, LLC, a Delaware Limited Liability Company** | 01/01/2017 |
| **Prison Health Services of Indiana, LLC** | 01/01/2017 |
| **Prison Health Services, Inc.** | 01/01/2017 |
| **Prison Medical, P.A** | 01/01/2017 |
| **Quality Correctional Care of Michigan, PC** | 01/01/2017 |
| **Quality Correctional Care of New Jersey, P.C. (fka CHS Medical Services, P.C.)** | 01/01/2017 |
| **Quality Correctional Care of Tennessee, P.C. (fka PHS Professional Medical Services, P.C.)** | 01/01/2017 |
| **Saavedra, M.D., PHS of Nevada Medical Services, P.C.** | 01/01/2017 |
| **Valitas Behavioral Services of Delaware, Inc.** | 01/01/2017 |
| **Valitas Behavioral Services, Inc.** | 01/01/2017 |
| **Valitas Equity LLC** | 01/01/2017 |
| **Valitas Health Services, Inc.** | 01/01/2017 |
| **Valitas, Inc.** | 01/01/2017 |
| **Young S. Kim, M.D. P.C. dba PHS of IL Medical Services** | 01/01/2017 |

Additional *insureds* and the *Named Insured* or other *insured* listed above will share the "each *claim*" and "all *claims*" limits of liability for all *claims* arising out of the same *insured incident*.  There shall be no additional limits of liability available to Additional *insureds*.

Coverage for additional *insureds* is limited to *claims* arising out of professional services performed by an individual or entity shown on the Declarations Page, Schedule of Insureds or applicable *endorsement*.

In no event shall the Company be liable under this policy for more than the limits of liability stated in the Declarations Page, Schedule of Insureds or applicable *endorsement* of *this policy*.

Nothing in this *endorsement* shall be held to amend, vary, extend or waive any of the terms, conditions, exclusions, representations, warranties and/or agreements in *this policy*, any other *endorsement* or any Declarations Page, except as expressly stated in this *endorsement*.

If *this policy* is initially issued with this *endorsement* forming a part thereof at that time and having the same effective date as such policy, or if this *endorsement* is issued together with any renewal or amendatory Declarations Page for *this policy* and having the same effective date as such Declarations Page, then no countersignature on this *endorsement* is necessary.   Otherwise this *endorsement* shall not be valid and binding on the Corporation unless countersigned below by an authorized representative of the Corporation.

This *endorsement* takes effect as of the beginning day and hour for the *policy period* of *this policy* stated in the applicable initial, renewal or amendatory Declarations Page, unless a different *endorsement* effective date is inserted above.

Issue Date:      **04/07/2017**

**AM**

Countersigned by: _____

_____
Authorized Representative of
Lone Star Alliance Inc., A Risk Retention Group

**OCCURRENCE**

LSA_52A
ver 0414

REVIEWED BY sean-coughlin ON 4/20/2017 10:45 AM
emailed to agent by sean-coughlin on 4/20/2017 10:45 AM

# LONE STAR ALLIANCE
### A RISK RETENTION GROUP

This *endorsement* forms a part of **POLICY NUMBER** 4-100159

*Policy Term*:
*Endorsement* Effective Date:
*Insured*:

01/01/2017 to 01/01/2018
01/01/2017
**Valitas Health Services, Inc.**

## POLICY ENDORSEMENT
### General Change

The below listed entity(s) will receive copies of cancellation of the policy at least Thirty (30) days before the actual cancellation and at least Ten (10) day notice for cancellation due to Non Payment of Premium.

**Cortland Capital Market Sevices LLC, as first lien administrative agent and first lien collateral agent**
**225 W. Washington St, 21st Floor**
**Chicago, Il 60606**
**Attn: Maria Villagomez and Legal Department**

**Cortland Capital Market Sevices LLC, as second lien administrative agent and second lien collateral agent**
**225 W. Washington St, 21st Floor**
**Chicago, Il 60606**
**Attn: Maria Villagomez and Legal Department**

Nothing in this *endorsement* shall be held to amend, vary, extend or waive any of the terms, conditions, exclusions, representations, warranties and/or agreements in *this policy*, any other *endorsement* or any Declarations Page, except as expressly stated in this *endorsement*.

If *this policy* is initially issued with this *endorsement* forming a part thereof at that time and having the same effective date as such policy, or if this *endorsement* is issued together with any renewal or amendatory Declarations Page for *this policy* and having the same effective date as such Declarations Page, then no countersignature on this *endorsement* is necessary. Otherwise this *endorsement* shall not be valid and binding on the Corporation unless countersigned below by an authorized representative of the Corporation.

This *endorsement* takes effect as of the beginning day and hour for the *policy period* of *this policy* stated in the applicable initial, renewal or amendatory Declarations Page, unless a different *endorsement* effective date is inserted above.

Issue Date:      04/20/2017

AM

Countersigned by:

Authorized Representative of
Lone Star Alliance Inc., A Risk Retention Group

**OCCURRENCE**

LSA_GEN
ver 0414

REVIEWED BY: andrew-mchale ON: 4/25/2017 1:47 PM
emailed to agent by sean-coughlin on 4/25/2017 2:13 PM



**LONE STAR ALLIANCE**
A RISK RETENTION GROUP

This *endorsement* forms a part of  **POLICY NUMBER    4-100159**

*Policy Term:*                          01/01/2017 to 01/01/2018
*Endorsement* Effective Date:  04/06/2017
*Insured:*                              **Valitas Health Services, Inc.**

## POLICY ENDORSEMENT
### Additional Insured

In consideration of the premium charged for *this policy* and this *endorsement*, it is hereby understood and agreed, subject to all terms, conditions and exclusions of *this policy* that the parties listed below are included as Additional *insureds*.

In no event shall the Corporation be liable under *this policy* for more than the limits of liability stated in the applicable Declarations Page or any *endorsement* of *this policy*.

| Additional *insured(s)* | Effective Date(s) | Termination Date(s) |
|---|---|---|
| **Cortland Capital Market Services LLC, as first lien administrative agent and first lien collateral agent 225 W. Washington St., 21st Floor Chicago, Illinois 60606 Attn: Maria Villagomez and Legal Department** | 04/06/2017 | |
| **Cortland Capital Market Services LLC, as second lien administrative agent and second lien collateral agent 225 W. Washington St., 21st Floor Chicago, Illinois 60606 Attn: Maria Villagomez and Legal Department** | 04/06/2017 | |

Additional *insureds* and the *Named Insured* or other insured listed above will share the "each *claim*" and "all *claims*" limits of liability for all *claims* arising out of the same *insured incident*. There shall be no additional limits of liability available to Additional *insureds*.

Coverage for additional *insureds* is limited to *claims* arising out of professional services performed by an individual or entity shown on the Declarations Page, Schedule of Insureds or applicable *endorsement*.

In no event shall the Corporation be liable under this policy for more than the limits of liability stated in the Declarations Page, Schedule of Insureds or applicable *endorsement* of *this policy*.

Nothing in this *endorsement* shall be held to amend, vary, extend or waive any of the terms, conditions, exclusions, representations, warranties and/or agreements in *this policy*, any other *endorsement* or any Declarations Page, except as expressly stated in this *endorsement*.

If *this policy* is initially issued with this *endorsement* forming a part thereof at that time and having the same effective date as such policy, or if this *endorsement* is issued together with any renewal or amendatory Declarations Page for *this policy* and having the same effective date as such Declarations Page, then no countersignature on this *endorsement* is necessary. Otherwise this *endorsement* shall not be valid and binding on the Corporation unless countersigned below by an authorized representative of the Corporation.

This *endorsement* takes effect as of the beginning day and hour for the *policy period* of *this policy* stated in the applicable initial, renewal or amendatory Declarations Page, unless a different *endorsement* effective date is inserted above.

Issue Date:    04/25/2017

AM

Countersigned by: _____
Authorized Representative of
Lone Star Alliance Inc., A Risk Retention Group

**OCCURRENCE**

LSA_52A
ver 0414

REVIEWED BY: andrew-mcbale ON: 4/25/2017 1:46 PM
Case 2:25-cv-11796-GAD-KGA ECF No. 2-1, PageID.237   Filed 06/01/26   Page 52 of 54
emailed to agent by sean-coughlin on 4/25/2017 2:13 PM



**LONE STAR ALLIANCE**
A RISK RETENTION GROUP

| | |
|---|---|
| This *endorsement* forms a part of | **POLICY NUMBER 4-100159** |
| Endorsement Effective Date: | 01/01/2017 to 01/01/2018 |
| Policy Term: | 01/01/2017 |
| Insured: | **Valitas Health Services, Inc.** |

## POLICY ENDORSEMENT
### Additional Insured

In consideration of the premium charged for *this policy* and this *endorsement*, it is hereby understood and agreed, subject to all terms, conditions and exclusions of *this policy* that the parties listed below are included as Additional *insureds*:

| Additional *insured(s)* | Effective Date(s) | Termination Date(s) |
|---|---|---|
| America Service Group, Inc. | 01/01/2017 | |
| CHS Medical Services P.C. | 01/01/2017 | |
| Comprehensive Correctional Care, P.C. (fka PHS Medical Corporation) | 01/01/2017 | |
| Corizon Health of New Jersey, LLC (fka Correctional Health Services, Inc.) | 01/01/2017 | |
| Corizon Health, Inc. (fka America Service Group, Inc.) | 01/01/2017 | |
| Corizon, Inc. (fka Correctional Medical Services, Inc.) | 01/01/2017 | |
| Corizon, LLC | 01/01/2017 | |
| Correctional Dental Associates of Alabama, PC | 01/01/2017 | |
| Correctional Dental Associates of Arkansas, PA | 01/01/2017 | |
| Correctional Dental Associates of New York, P.C. (fka PHS Dental Services, P.C.) | 01/01/2017 | |
| Correctional Health Services, Inc. | 01/01/2017 | |
| Correctional Health Services, LLC | 01/01/2017 | |
| Correctional Healthcare Associates of Kansas, PA | 01/01/2017 | |
| Correctional Medical Associates of Greater New York, PC | 01/01/2017 | |
| Correctional Medical Associates of New York, P.C. (fka PHS Medical Services, P.C.) | 01/01/2017 | |
| Correctional Medical Services of Delaware, Inc. | 01/01/2017 | |
| Correctional Medical Services of Illinois, Inc. | 01/01/2017 | |
| Correctional Medical Services, Inc., a Missouri Corporation | 01/01/2017 | |
| Correctional Physician Associates of Arkansas, PA | 01/01/2017 | |
| Cortland Capital Market Services, LLC | 01/01/2017 | |
| EMSA Correctional Care, Inc. | 01/01/2017 | |
| EMSA Government Services, Inc. | 01/01/2017 | |
| EMSA Limited Partnership | 01/01/2017 | |
| EMSA Military Services, Inc. | 01/01/2017 | |
| Genesis Behavioral Services, Inc. | 01/01/2017 | |
| Ivor Garlick, MD PC and Correctional Dental Associates PHS of Michigan, PC | 01/01/2017 | |
| PHS Community Care, LLC | 01/01/2017 | |
| PHS Dental Services, PC | 01/01/2017 | |
| PHS Medical Corporation | 01/01/2017 | |
| PHS Medical Services, P.C. | 01/01/2017 | |

OCCURRENCE

LSA_52A
ver 0414

| | |
|---|---|
| **PHS Professional Medical Service, PSC** | **01/01/2017** |
| **PHS Professional Medical Services, P.C.** | **01/01/2017** |
| **PHS Regional Medical, PC** | **01/01/2017** |
| **PHS of Kansas, P.A.** | **01/01/2017** |
| **PHS of North Carolina Medical Services, PC** | **01/01/2017** |
| **PharmaCorr, LLC, a Delaware Limited Liability Company** | **01/01/2017** |
| **Prison Health Services of Indiana, LLC** | **01/01/2017** |
| **Prison Health Services, Inc.** | **01/01/2017** |
| **Prison Medical, P.A** | **01/01/2017** |
| **Quality Correctional Care of Michigan, PC** | **01/01/2017** |
| **Quality Correctional Care of New Jersey, P.C. (fka CHS Medical Services, P.C.)** | **01/01/2017** |
| **Quality Correctional Care of Tennessee, P.C. (fka PHS Professional Medical Services, P.C.)** | **01/01/2017** |
| **Saavedra, M.D., PHS of Nevada Medical Services, P.C.** | **01/01/2017** |
| **Valitas Behavioral Services of Delaware, Inc.** | **01/01/2017** |
| **Valitas Behavioral Services, Inc.** | **01/01/2017** |
| **Valitas Equity LLC** | **01/01/2017** |
| **Valitas Health Services, Inc.** | **01/01/2017** |
| **Valitas Holdings, Inc.** | **04/14/2017** |
| **Valitas Intermediate Holdings, Inc.** | **04/14/2017** |
| **Valitas, Inc.** | **01/01/2017** |
| **Young S. Kim, M.D. P.C. dba PHS of IL Medical Services** | **01/01/2017** |

Additional *insureds* and the *Named Insured* or other *insured* listed above will share the "each *claim*" and "all *claims*" limits of liability for all *claims* arising out of the same *insured incident*. There shall be no additional limits of liability available to Additional *insureds*.

Coverage for additional *insureds* is limited to *claims* arising out of professional services performed by an individual or entity shown on the Declarations Page, Schedule of Insureds or applicable *endorsement*.

In no event shall the Company be liable under this policy for more than the limits of liability stated in the Declarations Page, Schedule of Insureds or applicable *endorsement* of *this policy*.

Nothing in this *endorsement* shall be held to amend, vary, extend or waive any of the terms, conditions, exclusions, representations, warranties and/or agreements in *this policy*, any other *endorsement* or any Declarations Page, except as expressly stated in this *endorsement*.

If *this policy* is initially issued with this *endorsement* forming a part thereof at that time and having the same effective date as such policy, or if this *endorsement* is issued together with any renewal or amendatory Declarations Page for *this policy* and having the same effective date as such Declarations Page, then no countersignature on this *endorsement* is necessary. Otherwise this *endorsement* shall not be valid and binding on the Corporation unless countersigned below by an authorized representative of the Corporation.

This *endorsement* takes effect as of the beginning day and hour for the *policy period* of *this policy* stated in the applicable initial, renewal or amendatory Declarations Page, unless a different *endorsement* effective date is inserted above.

Issue Date:   **04/25/2017**                          Countersigned by:

**AM**

_____
Authorized Representative of
Lone Star Alliance Inc., A Risk Retention Group

**OCCURRENCE**

LSA_52A
ver 0414



**LONE STAR ALLIANCE**

A RISK RETENTION GROUP

This *endorsement* forms a part of

*Policy Term*:
*Endorsement* Effective Date:
*Insured*:

**POLICY NUMBER    4-100159**

**01/01/2017 to 01/01/2018**
**01/01/2017**
**Valitas Health Services, Inc.**

## POLICY ENDORSEMENT
### General Change

**In consideration of the premium charged for this policy and this endorsement, it is hereby understood and agreed, subject to all terms conditions and exclusions of this policy:**

**Section II.A. of General Policy Provisions and Conditions is deleted and the following is substituted in lieu thereof:**

**The insured shall: (1) Cooperate with the Corporation in the investigation, settlement, or defense of the claim or suit; and (2) Assist the Corporation, upon our request, in the enforcement of any right against any persons or organizations which may be liable to the insured because of injury or damage to which this insurance may also apply.**
**The insured shall not, except at the insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.**

Nothing in this *endorsement* shall be held to amend, vary, extend or waive any of the terms, conditions, exclusions, representations, warranties and/or agreements in *this policy*, any other *endorsement* or any Declarations Page, except as expressly stated in this *endorsement*.

If *this policy* is initially issued with this *endorsement* forming a part thereof at that time and having the same effective date as such policy, or if this *endorsement* is issued together with any renewal or amendatory Declarations Page for *this policy* and having the same effective date as such Declarations Page, then no countersignature on this *endorsement* is necessary.   Otherwise this *endorsement* shall not be valid and binding on the Corporation unless countersigned below by an authorized representative of the Corporation.

This *endorsement* takes effect as of the beginning day and hour for the *policy period* of *this policy* stated in the applicable initial, renewal or amendatory Declarations Page, unless a different *endorsement* effective date is inserted above.

Issue Date:    **09/15/2017**

Countersigned by:  _____

Authorized Representative of
Lone Star Alliance Inc., A Risk Retention Group

**AM**

**OCCURRENCE**

LSA_GEN
ver 0414