UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KOHCHISE JACKSON, individually, and
KOHCHISE JACKSON, as assignee of
DR. KEITH L. PAPENDICK,

      Plaintiffs,

-vs-

LONE STAR ALLIANCE, INC., and
QUALITY CORRECTIONAL CARE OF
MICHIGAN, P.C.

      Defendants.

Case No. 2:26-cv-11795
Hon. Linda V. Parker
Mag. Anthony P. Patti

---

JONATHAN R. MARKO (P72450)
ALLIE J. FARRIS (P88654)
**MARKO LAW, PLLC**
Attorney for Plaintiff
220 W. Congress, Fourth Floor
Detroit, MI 48226
P: (313) 777-7777 / F: (313) 470-2011
jon@markolaw.com
allie@markolaw.com
melinda@markolaw.com

IAN T. CROSS (P83367)
LAURENCE H. MARGOLIS (P69635)
**LAURENCE H. MARGOLIS P.C.**
Attorneys for Plaintiff
214 S. Main St., Ste 200
Ann Arbor, MI 48104
(734) 994-9590
ian@lawinannarbor.com
larry@lawinannarbor.com

JAMES P. ALLEN, SR. (P52885)
**SCHENK & BRUETSCH, PLC**
Attorney for Defendant Quality Care of MI
211 W. Fort Street, Suite 1410
Detroit, MI 48226
(313) 774-1000
james.allen@SBDetroit.com

TIMOTHY A. DIEMER (P65084)
NATHAN PEPLINSKI (P66596)
**JACOBS AND DIEMER, P.C.**
Attorneys for Defendant Lone Star Alliance
211 W. Fort Street, Suite 1400
Detroit, MI 48226
P: (313) 965-1900
tad@jacobdiemer.com
npeplinski@jacobdiemer.com

---

## PLAINTIFFS' MOTION TO REMAND TO WAYNE COUNTY CIRCUIT COURT AND FOR FEES AND COSTS

NOW COME Plaintiffs, KOHCHISE JACKSON, individually, and KOHCHISE JACKSON, as assignee of DR. KEITH L. PAPENDICK, by and through their attorneys, **MARKO LAW, PLLC,** and **LAURENCE H. MARGOLIS P.C.,** and respectfully move this Honorable Court to remand this action to Wayne County Circuit Court and award fees and costs, state as follows:

1.     On April 28, 2026, Plaintiffs, citizens of Michigan, filed their Complaint in the Circuit Court for the County of Wayne, Michigan, Case No. 26-007050-CK, asserting a claim for declaratory judgment as to insurance coverage obligations under Michigan state law. *See* **ECF No. 1-2.**

2.     Defendant Quality Correctional Care of Michigan, P.C., ("Quality Correctional Care") is, like Plaintiffs, a citizen of the State of Michigan for purposes of diversity jurisdiction.

3.     On June 1, 2026, Defendant Lone Star Alliance Inc., ("Lone Star"), filed a Notice of Removal, removing the action to this Honorable Court (**ECF No. 1**).

4.     Lone Star asserted that this Court has original jurisdiction under 28 U.S.C. § 1332.

5.     Lone Star's removal is predicated on the argument that complete diversity exists because the non-diverse, Michigan-based Defendant, Quality

2

Correctional Care, was improperly and fraudulently joined for the sole purpose of defeating federal diversity jurisdiction.

6. Removal was improper because this Court lacks subject matter jurisdiction as complete diversity of citizenship, pursuant to 28 U.S.C. § 1332, is absent on the face of Plaintiffs' Complaint.

7. The non-diverse Defendant Quality Correctional Care was not fraudulently joined.

8. To prove fraudulent joinder, the removing party must show that there is no "colorable basis for predicting that a plaintiff may recover" against the non-diverse defendant. *See Coyne ex rel. Ohio v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999). If there is even a "glimmer of hope," for a claim, the joinder is not fraudulent. *See Hartley v CSX Transp., Inc.*, 187 F.3d 422, 426 (4th Cir. 1999). Lone Star has failed to meet this heavy burden.

9. Plaintiffs have asserted a colorable claim for declaratory relief directly affecting Defendant Quality Correctional Care. The Complaint specifically alleges that Quality Correctional Care is an insured under the professional liability policies issued by Lone Star, and that Lone Star has a duty to indemnify Quality Correctional Care and its insured physicians for covered claims up to the applicable policy limits. (**ECF No. 1-2, PageID.27, ¶ 46**). Quality Correctional Care's rights, obligations, and coverage position under those policies are squarely at issue in this declaratory

3

judgment action, providing a fully cognizable and colorable basis for its inclusion as a defendant under MCR 2.605.

10. Indeed, pursuant to MCR 2.605, Quality Correctional Care's joinder was not merely colorable, but necessary, because Michigan declaratory-judgment law requires the joinder of parties with an apparent or possible interest in the subject matter so that any declaration will bind the entities whose rights and obligations are being adjudicated.

11. Defendant Lone Star's arguments in its Notice of Removal improperly attempt to have this Court rule on the merits of Plaintiffs' state-law action against Defendants Quality Correctional Care and Lone Star, and the proper scope of the declaratory judgment action, which is contrary to the limited inquiry permitted on a motion to remand. Any disputed questions of fact and/or ambiguities in state law must be resolved in favor of the Plaintiffs. *See Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994).

12. Lone Star's alternative argument that Quality Correctional Care should be realigned as a plaintiff rather than treated as a defendant is insufficient to warrant removal as it is a disputed legal and factual question that must be resolved in Plaintiffs' favor for the purposes of the remand analysis. The propriety of realignment cannot be determined on the bare record before this Court, and all doubts on this issue must be resolved in favor of remand.

13.     Because there is a colorable basis for declaratory relief affecting the non-diverse Defendant's rights and obligations under the policies at issue, Quality Correctional Care was not fraudulently joined, complete diversity is lacking, and this case must be remanded. "All doubts as to the propriety of removal are resolved in favor of remand." *Coyne*, 183 F.3d at 493.

14.     Plaintiffs also request that this Court award fees and costs pursuant to 28 U.S.C. § 1447(c), which provides that an order remanding a case "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."

15.     Fees and costs are warranted because Lone Star lacked an objectively reasonable basis for seeking removal. The law on fraudulent joinder in the Sixth Circuit is well-settled and imposes a substantial burden on the removing party. Lone Star knew or should have known that Plaintiffs' allegations against Defendant Quality Correctional Care provided at least a colorable basis for declaratory relief affecting Quality Correctional Care's rights and obligations under the policies, making removal improper.

16.     Lone Star's removal has forced Plaintiffs to incur unnecessary costs and attorney's fees to prepare and file this Motion and Brief in Support, and has delayed the adjudication of this matter in the proper state court forum.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7777
F: ((313) 470-2011

MARKO LAW

17. Pursuant to E.D. Mich. L.R. 7.1(a), Plaintiffs requested concurrence on June 9, 2026, prior to filing the instant motion via email. As of the filing of this motion, concurrence had not yet been provided.

**WHEREFORE**, Plaintiffs KOHCHISE JACKSON, individually, and KOHCHISE JACKSON, as assignee of DR. KEITH L. PAPENDICK, respectfully request that this Honorable Court enter an Order:

A. Remanding this case to the Wayne County Circuit Court;

B. Awarding Plaintiffs their just costs and any actual expenses, including attorney fees, incurred as a result of the improper removal; and

C. Granting such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/ *Jonathan R. Marko*
Jonathan R. Marko (P72450)
**MARKO LAW, PLLC**
220 W. Congress, Fourth Floor
Detroit, MI 48226
(313) 777-7777 / Fax: (313) 470-2011
Email: jon@markolaw.com

Dated: June 10, 2026

6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KOHCHISE JACKSON, individually, and
KOHCHISE JACKSON, as assignee of
DR. KEITH L. PAPENDICK,

     Plaintiffs,

-vs-

LONE STAR ALLIANCE, INC., and
QUALITY CORRECTIONAL CARE OF
MICHIGAN, P.C.

     Defendants.

Case No. 2:26-cv-11795
Hon. Linda V. Parker
Mag. Anthony P. Patti

JONATHAN R. MARKO (P72450)
ALLIE J. FARRIS (P88654)
**MARKO LAW, PLLC**
Attorney for Plaintiff
220 W. Congress, Fourth Floor
Detroit, MI 48226
P: (313) 777-7777 / F: (313) 470-2011
jon@markolaw.com
allie@markolaw.com
melinda@markolaw.com

IAN T. CROSS (P83367)
LAURENCE H. MARGOLIS (P69635)
**LAURENCE H. MARGOLIS P.C.**
Attorneys for Plaintiff
214 S. Main St., Ste 200
Ann Arbor, MI 48104
(734) 994-9590
ian@lawinannarbor.com
larry@lawinannarbor.com

JAMES P. ALLEN, SR. (P52885)
**SCHENK & BRUETSCH, PLC**
Attorney for Defendant Quality Care of MI
211 W. Fort Street, Suite 1410
Detroit, MI 48226
(313) 774-1000
james.allen@SBDetroit.com

TIMOTHY A. DIEMER (P65084)
NATHAN PEPLINSKI (P66596)
**JACOBS AND DIEMER, P.C.**
Attorneys for Defendant Lone Star Alliance
211 W. Fort Street, Suite 1400
Detroit, MI 48226
P: (313) 965-1900
tad@jacobdiemer.com
npeplinski@jacobdiemer.com

## BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND TO WAYNE COUNTY CIRCUIT COURT AND FOR FEES AND COSTS

## **TABLE OF CONTENTS**

Index of Authorities .............................................................................. ii

Concise Statement of Issues Presented ................................................ iv

Controlling or Most Appropriate Authority ......................................... v

Statement of Material Facts .................................................................. 1

Argument .............................................................................................. 7

    I.      Removal Was Improper Because Lone Star Cannot Carry Its
         Heavy Burden to Show Fraudulent Joinder, Complete Diversity
         Is Lacking, and Remand to Wayne County Circuit Court Is
         Required. .................................................................................. 7

         A.    Plaintiffs' Complaint Pled a Colorable Claim for Declaratory
             Relief Affecting Quality Correctional Care's Rights as a
             Named Additional Insured Under the Lone Star Policy ............. 10

         B.    Lone Star's Removal Theory Ignores the Pled Claim and
             Improperly Asks This Court to Adjudicate Contested
             State-Law Coverage Issues ....................................................... 13

    II.    Defendant's Improper Removal Lacked Any Objectively
         Reasonable Basis and Warrants an Award of Plaintiffs' Fees
         and Costs .................................................................................. 18

Conclusion .......................................................................................... 22

i

# INDEX OF AUTHORITIES

## Cases

*Alexander v. Elec. Data Sys. Corp.*,
13 F.3d 940 (6th Cir. 1994) ........................................................................ 8, 16, 18

*Allstate Ins. Co. v. Hayes*,
442 Mich. 56 (1993) ......................................................................................... 11, 12

*Casias v. Wal-Mart Stores, Inc.*,
695 F.3d 428 (6th Cir. 2012) ........................................................................ 7, 9, 15

*Castle v. 3M Company*,
664 F.Supp.3d 770 (E.D. Ky. 2023) ............................................................... 8, 9, 18

*Christensen v. ATS, Inc.*,
24 F. Supp. 3d 610 (E.D. Ky. 2014) ....................................................................... 9

*Coyne ex rel. Ohio v. Am. Tobacco Co.*,
183 F.3d 488 (6th Cir. 1999) ....................................................................... *passim*

*Hartley v. CSX Transp.*,
187 F.3d 422 (4th Cir. 1999) ................................................................................. 9

*Hudson v. Village of Homer*,
351 Mich. 73 (1957) .............................................................................................. 11

*Jackson v. Cooper Tire & Rubber Co.*,
57 F.Supp.3d 863 (M.D. Tenn. 2014) ..................................................................... 9

*Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*,
176 F.3d 904 (6th Cir. 1999) .............................................................................. 7, 8

*Kent State Univ. Bd. Of Trs. v. Lexington Ins. Co.*,
512 F. App'x 485 (6th Cir. 2013) ........................................................................... 8

*Martin v. Franklin Capital Corp.*,
546 U.S. 132 (2005) .............................................................................................. 19

*Walker v. Philip Morris USA, Inc.*,
443 F. App'x 946 (6th Cir. 2011)............................................................................. 9

*Warthman v. Genoa Twp. Bd. of Trs.*,
549 F.3d 1055 (6th Cir. 2008)............................................................................. 19

## Statutes

28 U.S.C. § 1332(a) ................................................................................... 5, 7, 18

28 U.S.C. § 1441 ............................................................................................ 7

28 U.S.C. § 1447(c) .................................................................................. 18, 19

## Court Rules

MCR 2.205(A) ............................................................................................. 11

MCR 2.605.............................................................................................. 11, 14

## CONCISE STATEMENT OF ISSUES PRESENTED

I.      Should this case be remanded to state court where Plaintiffs seek declaratory relief affecting the rights and obligations of a non-diverse, Michigan-based Defendant that is a named insured under the very policy at issue, thereby defeating complete diversity and depriving this Court of subject matter jurisdiction?

**Plaintiffs state:**           **Yes.**

**This Court should state:**    **Yes.**

**Defendants state:**           **No.**

II.     Should this Court award Plaintiffs their costs and attorney fees incurred as a result of removal where the removing Defendant lacked an objectively reasonable basis for asserting fraudulent joinder of a named insured whose coverage rights and obligations are directly implicated by the policy at issue in this action?

**Plaintiffs state:**           **Yes.**

**This Court should state:**    **Yes.**

**Defendants state:**           **No.**

iv

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

28 U.S.C. § 1332(a)

28 U.S.C. § 1441

28 U.S.C. § 1447(c)

*Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940 (6th Cir. 1994)

*Coyne ex rel. Ohio v. Am. Tobacco Co.*, 183 F.3d 488 (6th Cir. 1999)

*Castle v. 3M Company*, 664 F.Supp.3d 770 (E.D. Ky. 2023)

*Warthman v. Genoa Twp. Bd. of Trs.*, 549 F.3d 1055 (6th Cir. 2008)

## STATEMENT OF MATERIAL FACTS

This action arises from a catastrophic series of events beginning with Kohchise Jackson's incarceration in the Michigan Department of Corrections from approximately 2017 through 2019. (**ECF No. 1-2, PageID.21, ¶ 11**). During that time, Mr. Jackson was under the medical care of physician Dr. Keith L. Papendick. (***Id.***). Mr. Jackson suffered from serious medical needs requiring prompt attention, and a jury ultimately found that Dr. Papendick denied Mr. Jackson the necessary medical care, causing him severe and permanent injuries. (***Id.*** **at PageID.22, ¶¶ 12-13**).

On April 2, 2026, after an eight-day federal jury trial, a jury found that Dr. Keith L. Papendick was deliberately indifferent to Plaintiff Kohchise Jackson's serious medical needs during Jackson's incarceration in the Michigan Department of Corrections. The jury awarded $7,500,000 in compensatory damages against Dr. Papendick and his co-defendants jointly and severally, and $100,000 in punitive damages against Dr. Papendick individually. On April 13, 2026, this Court entered final judgment totaling $307,600,000. (***Id.*** **at PageID.34**). That judgment remains wholly unsatisfied. (***Id.*** **at PageID.24, ¶ 33**).

At the time of the events giving rise to the underlying verdict, Dr. Papendick was an employee and agent of Defendant Quality Correctional Care of Michigan, P.C. — a Michigan professional corporation located in Plymouth, Wayne County,

1

Michigan. (*Id.* at **PageID.21, ¶¶ 6–7**). Dr. Papendick was covered under a professional liability insurance policy issued by Defendant Lone Star Alliance, Inc., a Risk Retention Group organized under the laws of Washington, D.C., with its principal place of business in Austin, Texas. (**ECF No. 1, PageID.4, ¶ 8(b)**). Lone Star is not a citizen of Michigan. (*Id*)*.* Dr. Papendick confirmed that employment relationship in his deposition in the underlying federal case:

> Q.    Who did you work for?
>
> A.    **Quality Correctional Care of Michigan PC.**
>
> * * *
>
> A.    **I worked for – it's kind of a mixed-up situation in Michigan – I worked for a company called Quality Correctional Care of Michigan PC, because physicians are not allowed to be employed by corporate.**

**Exhibit 1, Papendick 5/10/21 Dep. at 7:13–8:10.**

Quality Correctional Care is also a subsidiary of Corizon Health, Inc. and Corizon's successor corporations, including CHS TX, Inc., a named defendant in the prior federal litigation that proceeded to trial.

Lone Star issued Policy No. 4-100159 — a Medical Professional Liability Insurance Policy, Occurrence form — for the policy period January 1, 2017 through January 1, 2018. (**ECF No. 1-2, PageID.31**). Quality Correctional Care is expressly identified as a named Additional Insured on the policy's Schedule of Additional Insureds, effective January 1, 2017. (**ECF No. 2–1, PageID.197**). Quality

2

Correctional Care's additional insured status was confirmed no fewer than three times in separate Additional Insured endorsements issued during the policy period. *See Id.* **at PageID.232, 234, 238**. The policy's Separation of Insureds provision expressly applies coverage "separately to each Insured against whom a claim is made or suit is brought," giving Quality Correctional Care independent coverage rights under the policy. (*Id.* **at PageID.229**).

On April 7, 2026, Plaintiffs' counsel made a formal written demand for disclosure of all potentially applicable insurance policies and for payment (**ECF No. 1-2, PageID.24, ¶ 27**). Despite the entry of final judgment and the formal demand for coverage, Lone Star has failed and refused to pay the $1,000,000.00 per-claim policy limit applicable to Dr. Papendick's coverage. (*Id.* **at ¶ 30**). The entire judgment remains wholly unsatisfied. (*Id.* **at ¶ 33**).

On April 28, 2026, Plaintiffs filed this declaratory action in the Circuit Court for the County of Wayne, Case No. 26-007050-CK. (**ECF No. 1-2**). Plaintiffs sue in two capacities: individually, as the judgment creditor holding the April 13, 2026 judgment against Dr. Papendick, and as Dr. Papendick's assignee, having received a complete assignment of all of Papendick's insurance rights and claims under all applicable Lone Star policies. (*Id.* **at PageID.20, 25, ¶¶ 3, 34–38**). Plaintiffs grounded venue in Wayne County Circuit Court specifically because Quality

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7777
F: ((313) 470-2011

MARKO LAW

3

Correctional Care "is located in the City of Plymouth, County of Wayne." (***Id.* at PageID.20, ¶ 2**).

The complaint names both Lone Star and Quality Correctional Care as defendants and alleges, in its operative count, that Lone Star issued professional liability policies to Quality Correctional Care and its insured physicians, including Dr. Papendick. (***Id.* at PageID.21, ¶¶ 5–6**). Paragraph 46 of the complaint — the operative paragraph of Count I — states expressly: "Under Michigan law and the terms of the insurance policies, Defendant Lone Star Alliance, Inc. has a duty to indemnify Dr. Keith L. Papendick and Defendant Quality Correctional Care of Michigan, among others, for covered claims up to the applicable policy limits." (***Id.* at PageID.27, ¶ 46**). The relief requested seeks declarations enforceable "directly against Defendants" — plural — and applies to the coverage obligations owed to both the insured physician and Quality Correctional Care.

On May 28, 2026 — four days before Lone Star filed for removal — Quality Correctional Care filed its Answer and Affirmative Defenses in Wayne County Circuit Court through its own separately retained counsel. (**ECF No. 1-8**). In that Answer, Quality Correctional Care admitted that it "is a Michigan professional corporation" located in Wayne County, and admitted in direct response to Paragraph 6 of the complaint that it is "an insured under the professional liability policies issued by Defendant Lone Star Alliance, Inc." (***Id.* at PageID.131, ¶ 6**). Quality

4

Correctional Care did not stand aside. It filed twenty-one substantive affirmative defenses contesting the merits of coverage, the validity of the assignment, the exhaustion of the self-insured retention, and Plaintiffs' standing — and it affirmatively sought a judgment in its favor dismissing it from the case. (***Id.* at PageID.138–40**).

On June 1, 2026, Lone Star filed its Notice of Removal, invoking 28 U.S.C. § 1332(a) and asserting that Quality Correctional Care — the only Michigan defendant — was "fraudulently" or "improperly" joined and should be disregarded for diversity purposes. (**ECF No. 1**). Lone Star's Notice concedes that Quality Correctional Care is a Michigan company. (***Id.* at PageID.4, ¶8(c)**). Without disregarding Quality Correctional Care's citizenship, no diversity exists: Plaintiffs are Michigan citizens; Quality Correctional Care is a Michigan citizen; and complete diversity is destroyed.

To accomplish that disregard, Lone Star's Notice characterizes Quality Correctional Care as "merely" Dr. Papendick's employer, asserts that "no allegations or claims are raised against Quality Correctional Care in the Declaratory Complaint," and claims that "Quality Correctional Care's rights or duties will not be affected by the outcome of this suit." (***Id.* at PageID.6, 9, ¶¶ 13–14, 34**). The Notice does not mention Paragraph 46 of the complaint — the paragraph that, by name, identifies Quality Correctional Care as an entity to whom Lone Star's duty to indemnify runs. (**ECF No. 1-2, PageID.27, ¶ 46**). The Notice does not address

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7777
F: ((313) 470-2011

MARKO LAW

Quality Correctional Care's status as a named Additional Insured under the policy. (**ECF No. 1**). And in its alternative argument, Lone Star concedes the very interest it elsewhere denies: "if this Court considers that Quality Correctional Care has some sort of interest in this declaratory judgment action," Lone Star argues, Quality Correctional Care should be realigned as a plaintiff. (***Id.* at PageID. 10–12, ¶¶ 43–49**).

On the same day it filed the Notice of Removal, Lone Star filed its Answer to the Declaratory Complaint. (**ECF No. 2**). In that Answer, Lone Star admitted that "Quality Correctional Care is an additional insured under that policy." (***Id.* at PageID.154–55, ¶ 6**). Lone Star attached the complete Policy No. 4-100159 as Exhibit A to its Answer — the same policy that lists Quality Correctional Care by name on the Schedule of Additional Insureds and across three separate endorsements. (**ECF No. 2-1, PageID.187**). The assertion in Lone Star's Notice of Removal that Quality Correctional Care has no stake in this litigation is thus contradicted, on the same filing date, by Lone Star's own Answer and Lone Star's own exhibit.

Plaintiffs now move to remand this action to Wayne County Circuit Court, where it was properly filed, and for an award of just costs and attorney fees incurred as a result of the improper removal.

6

## **ARGUMENT**

**I.    REMOVAL WAS IMPROPER BECAUSE REMOVAL WAS IMPROPER BECAUSE LONE STAR CANNOT CARRY ITS HEAVY BURDEN TO SHOW FRAUDULENT JOINDER, COMPLETE DIVERSITY IS LACKING, AND REMAND TO WAYNE COUNTY CIRCUIT COURT IS REQUIRED.**

Defendant Lone Star's removal of this action is improper because it cannot meet the well-established "heavy burden" that the non-diverse Defendant Quality Correctional Care was fraudulently joined.

A defendant may remove a case based on diversity jurisdiction only if there is complete diversity of citizenship between the plaintiffs and all properly joined defendants. 28 U.S.C. §§ 1332(a), 1441. When a non-diverse defendant has been joined, the removing defendant may avoid remand only by establishing that the non-diverse party was "fraudulently joined." *Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999).

The fraudulent joinder doctrine is "a judicially created doctrine that provides an exception to the requirement of complete diversity." *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 432 (6th Cir. 2012) (quoting *Coyne ex rel. Ohio v. Am. Tobacco Co.,* 183 F.3d 488, 493 (6th Cir. 1999)). It is a narrow exception reserved for cases in which a plaintiff has no conceivable claim against a non-diverse defendant. "To prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants

7

under state law." *Coyne*, 183 F.3d at 493. Put differently, "[t]here can be no fraudulent joinder unless it be clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law." *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) (citation omitted). If there is "arguably a reasonable basis for predicting that the state law might impose liability on the facts involved," then remand is required. *Id.*

Federal courts are courts of limited jurisdiction and possess only that power authorized by the Constitution and statute. As such, removal statutes are to be strictly construed, and the "removing party faces a **heavy burden** in attempting to demonstrate fraudulent joinder." *Castle v. 3M Company*, 664 F.Supp.3d 770, 773 (E.D. Ky. 2023) (citing *Kent State Univ. Bd. Of Trs. v. Lexington Ins. Co.*, 512 F. App'x 485, 489-90 (6th Cir. 2013) (emphasis added).

The standard favors remand at every step. Disputed questions of fact and ambiguities in controlling state law are resolved in Plaintiffs' favor. *Alexander*, 13 F.3d at 949. "All doubts as to the propriety of removal are resolved in favor of remand." *Coyne*, 183 F.3d at 493. Critically, the question is not whether Plaintiffs will ultimately prevail against Quality Correctional Care. It is whether Plaintiffs have stated "at least a colorable cause of action" against the non-diverse defendant under state law. *Jerome-Duncan,* 176 F.3d at 907. As Courts within the Sixth Circuit have explained:

"**If the plaintiff has even a 'glimmer of hope,'** then any charge of fraudulent joinder fails, and the Court must remand the case to state court for want of subject matter jurisdiction." *Christensen v. ATS, Inc.*, 24 F. Supp. 3d 610, 613 (E.D. Ky. 2014) (internal citation omitted); *see also Hartley v. CSX Transp.*, 187 F.3d 422, 426 (4th Cir. 1999) ("Once the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends."). Further, "[t]he non-moving party's motive for joining the non-diverse party to the lawsuit is 'immaterial to our determination regarding fraudulent joinder.'" *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 951 (6th Cir. 2011).

*Castle*, 664 F.Supp.3d at 773-74 (emphasis added).

In assessing whether a colorable claim exists, the district court must apply a test "similar to, but more lenient than, the analysis applicable to a Rule 12(b)(6) motion to dismiss." *Casias*, 695 F.3d at 433. Importantly, a federal court evaluating fraudulent joinder must apply the pleading standard of the applicable state court, not the more stringent federal standard. *Jackson v. Cooper Tire & Rubber Co.*, 57 F.Supp.3d 863, 867-69 (M.D. Tenn. 2014). Applying the federal standard would cause the "fraudulent joinder standard and the federal pleading standard [to] merge, and the lenient grounds on which a plaintiff may obtain remand back to state court would be nullified." *Id.*

Plaintiffs do not need to prove that they will ultimately prevail on the coverage issues. Plaintiffs need only a reasonable basis for predicting that Michigan law permits declaratory relief affecting Quality Correctional Care's rights, obligations, and coverage position under the policies at issue. That basis is found in the four corners of the Complaint itself. Because Lone Star cannot show that Plaintiffs have

9

no colorable basis for including Quality Correctional Care in this declaratory judgment action, this case must be remanded.

> **A.    Plaintiffs' Complaint Pled a Colorable Claim for Declaratory Relief Affecting Quality Correctional Care's Rights as a Named Additional Insured Under the Lone Star Policy.**

Lone Star's central argument for fraudulent joinder is that "no allegations or claims are raised against Quality Correctional Care in the Declaratory Complaint." (**ECF No. 1, PageID.6, ¶ 13**). This assertion is directly contradicted by the face of the Complaint itself.

The Complaint alleges in plain terms that Quality Correctional Care is a named insured under the professional liability policies issued by Lone Star. (**ECF No. 1-2, PageID.21, ¶ 6**). The colorable claim against Quality Correctional Care is not difficult to find. It is written plainly in the operative count. Paragraph 46 of the complaint states: "Under Michigan law and the terms of the insurance policies, Defendant Lone Star Alliance, Inc. has a duty to indemnify Dr. Keith L. Papendick and Defendant Quality Correctional Care of Michigan, among others, for covered claims up to the applicable policy limits." (**_Id._ at PageID.27, ¶ 46**).

That paragraph expressly names Quality Correctional Care as an entity to whom Lone Star's contractual duty of indemnification runs. It appears in Count I, the operative and only count of the complaint. It is not background, and it is not jurisdictional boilerplate. These allegations go to the heart of this declaratory

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7777
F: ((313) 470-2011

JM MARKO LAW

judgment action. Plaintiffs seek a judicial declaration of the rights and obligations of all parties under the professional liability policies issued by Lone Star. Quality Correctional Care, as a named insured whose policy rights may be directly affected by the Court's declaration, is a proper and necessary party to this action under MCR 2.605. There is, at an absolute minimum, a colorable basis for including Quality Correctional Care as a defendant in a declaratory judgment action regarding the scope of coverage under policies in which it is expressly named as an insured.

Michigan law confirms why. Michigan's declaratory judgment rule, MCR 2.605, authorizes a court of record to "declare the rights and other legal relations of an interested party seeking a declaratory judgment" in "a case of actual controversy within its jurisdiction." Alongside this authority, the necessary joinder rule, MCR 2.205(A), requires that "persons having such interests in the subject matter of an action that their presence in the action is essential to permit the court to render complete relief must be made parties." That requirement carries particular force in declaratory actions. The Michigan Supreme Court has explained that the "essential purpose of the declaratory judgment statute, [is] that all parties having an apparent or possible interest in the subject matter be joined so that all be guided and concluded by such judgment or decree as may be entered." *Hudson v. Village of Homer*, 351 Mich. 73, 85 (1957). The Court reaffirmed this principle in *Allstate Ins. Co. v. Hayes*, 442 Mich. 56, 65-66 (1993), holding that "[i]t is essential in an action for declaratory

11

judgment that all parties having an apparent or possible interest in the subject matter be joined so that they may be guided and bound by the judgment." Lone Star's fraudulent-joinder theory cannot be reconciled with that rule. Quality Correctional Care is not an outsider to this coverage dispute. It is an insured under the policy, Papendick's direct employer, and a subsidiary of the Corizon/CHS corporate structure implicated by the underlying federal judgment. Michigan law did not permit Plaintiffs to seek a declaration affecting those rights and obligations while pretending Quality Correctional Care did not exist.

The policy confirms what the complaint alleges. Quality Correctional Care is identified by name in the policy's Schedule of Additional Insureds, effective January 1, 2017. (**ECF No. 2–1, PageID.197**). That status was confirmed in no fewer than three separate Additional Insured endorsements issued during the policy period. (***Id.*** **at PageID.232, 234, 238**). Both parties have admitted it. Lone Star's own Answer states that "Quality Correctional Care is an additional insured under that policy." (**ECF No. 2, PageID.154-55, ¶ 6**). Quality Correctional Care's own Answer admits that it is "an insured under the professional liability policies issued by Defendant Lone Star Alliance, Inc." (**ECF No. 1-8, PageID.131, ¶ 6**). A named additional insured under the very policy at the center of a coverage declaratory action is not a nominal party inserted to manufacture forum. It is precisely the kind of party a coverage declaratory action is designed to include.

12

The policy's structure further confirms that Quality Correctional Care's coverage rights are directly at stake in this proceeding. The policy's Separation of Insureds provision applies coverage "separately to each Insured against whom a claim is made or suit is brought," giving Quality Correctional Care independent coverage rights that rise or fall with the declaratory determination in this action. (**ECF No. 2-1, PageID.229**). The Additional Insured endorsements provide that additional insureds share per-claim and aggregate policy limits for claims arising from the same insured incident. Quality Correctional Care's own litigation posture confirms it understands what is at stake: it retained separate counsel, filed a twenty-one-count affirmative defense pleading contesting the merits of coverage, and affirmatively sought a substantive judgment of dismissal in its favor. (**ECF No. 1-8, PageID.138–40**). Nominal parties do not engage separate counsel or litigate twenty-one affirmative defenses on the merits of insurance coverage. Quality Correctional Care is a real, interested, and properly joined defendant.

### B.     Lone Star's Removal Theory Ignores the Pled Claim and Improperly Asks This Court to Adjudicate Contested State-Law Coverage Issues.

Lone Star's fraudulent joinder argument rests on a characterization of the complaint that the complaint does not support. The Notice of Removal asserts that "no allegations or claims are raised against Quality Correctional Care in the Declaratory Complaint" and that Quality Correctional Care is "merely listed as the employer of Dr. Keith L. Papendick." (**ECF No. 1, PageID. 6,  ¶¶ 13–14**). The

13

Notice never mentions Paragraph 46. That omission is not incidental. Lone Star's entire fraudulent joinder theory depends on erasing the operative paragraph that names Quality Correctional Care as an entity owed a duty of indemnification. A removal theory built on ignoring the complaint's operative pleading cannot satisfy the fraudulent joinder standard.

Moreover, Lone Star's argument misunderstands the nature of a declaratory judgment action. The purpose of MCR 2.605 is precisely to resolve present controversies between all interested parties regarding their legal rights and obligations before further harm ensues. Under that framework, naming Quality Correctional Care, a party whose coverage rights are directly implicated by the declarations sought, is not fraudulent. It is procedurally appropriate and legally necessary. Any other result would allow Lone Star to avoid its coverage obligations by strategically limiting the parties before the court to those it prefers.

Lone Star's specific arguments confirm that its fraudulent-joinder theory is nothing more than a merits attack dressed in jurisdictional clothing. Lone Star contends that Quality Correctional Care was not a party to the underlying action, that no judgment was entered against it, that no assignment was claimed from it, and that it therefore has no stake in this declaratory judgment action. But those arguments do not establish fraudulent joinder. They ask this Court to decide contested questions of Michigan insurance law at the threshold jurisdictional stage.

14

That is not the test. The question is not whether Plaintiffs are guaranteed to prevail against Quality Correctional Care. The question is whether there is at least a "colorable basis" for Plaintiffs' claim under state law. *Coyne*, 183 F.3d at 493. And courts may pierce the pleadings in the fraudulent-joinder context only for the "limited purpose of determining whether there are undisputed facts that negate the [plaintiffs'] claim[s]." *Casias*, 695 F.3d at 433. The undisputed facts here do the opposite. Quality Correctional Care is a named additional insured under Lone Star Policy No. 4-100159, and both Lone Star and Quality Correctional Care have admitted that fact. That alone supplies a colorable basis to include Quality Correctional Care in an action seeking to declare the scope of coverage under that very policy.

Lone Star's contrary arguments all turn on disputed coverage questions that belong in state court. Whether Quality Correctional Care's additional-insured status gives it enforceable rights in this proceeding, whether a declaration will affect Quality Correctional Care's contractual position under the Separation of Insureds clause, whether Plaintiffs' pleaded claim in Paragraph 46 is cognizable under Michigan insurance law, and whether those rights are affected by the policy's self-insured-retention structure are merits questions. They are not undisputed jurisdictional facts that eliminate Plaintiffs' claim. Lone Star may believe those arguments ultimately defeat coverage. But fraudulent joinder is not a vehicle for

15

converting a disputed state-law insurance defense into federal subject-matter jurisdiction.

Nor does it matter that Quality Correctional Care was not a defendant in the underlying action or that the judgment was not entered directly against it. This case is not the underlying tort action. It is a declaratory judgment action concerning Lone Star's coverage obligations under Policy No. 4-100159. And even on Lone Star's own framing, Quality Correctional Care was not some unrelated employer: Dr. Papendick testified that he worked directly for Quality Correctional Care, which is also tied to the Corizon/CHS corporate structure implicated by the underlying litigation. A named insured or additional insured under the policy has an obvious legal interest in how the policy is interpreted, how the Separation of Insureds clause applies, and whether Lone Star must provide coverage. At minimum, that interest is sufficient to defeat Lone Star's heavy burden to show that it is "clear" Plaintiffs have no cognizable basis to seek declaratory relief affecting Quality Correctional Care's rights, obligations, and coverage position under the Lone Star policy. *Alexander*, 13 F.3d at 949.

Lone Star's alternative realignment argument only underscores the defect in its removal theory. In the same Notice of Removal, Lone Star argues that, if Quality Correctional Care has "some sort of interest" in the outcome, then Quality Correctional Care should be realigned as a plaintiff for diversity purposes. (**ECF No.**

16

**1, PageID.10-11, ¶¶ 43–49**). That argument concedes the premise that defeats fraudulent joinder. A party with a recognized interest in the outcome of a declaratory judgment action is not a sham defendant fraudulently included to destroy diversity. It is a real party with a real stake.

Lone Star cannot have it both ways. It cannot argue, for fraudulent-joinder purposes, that Quality Correctional Care has no legitimate role in this litigation whatsoever, while simultaneously arguing, for realignment purposes, that Quality Correctional Care has enough of a stake in the controversy that it belongs on the plaintiff side of the case. Those positions are irreconcilable. At minimum, the contradiction confirms that Lone Star's theory depends on contested questions about Quality Correctional Care's legal interests under the policy, not on undisputed facts negating Plaintiffs' claim.

Realignment also fails on the actual record before the Court. Quality Correctional Care has not appeared as Plaintiffs' ally. It appeared through separate counsel, denied or contested material allegations, asserted twenty-one affirmative defenses, challenged Plaintiffs' standing, challenged the assignment, raised the self-insured retention, contested coverage, and requested dismissal from the case. That is not a party whose interests are so completely aligned with Plaintiffs that the Court may rewrite the pleadings to manufacture diversity jurisdiction. At minimum, Quality Correctional Cares's own pleading demonstrates an actual and substantial

17

dispute between Plaintiffs and Quality Correctional Care, which forecloses Lone Star's effort to treat it as a nominal or aligned plaintiff for jurisdictional purposes.

In any event, realignment does not save removal for the same reason. Whether Quality Correctional Care's interests are adverse to Lone Star, as the insurer seeking to avoid paying policy benefits, or aligned with Plaintiffs, as parties seeking a declaration of coverage, is itself a disputed legal and factual issue. That question cannot be resolved on this sparse record without deciding the very merits issues that the fraudulent-joinder doctrine forbids this Court from deciding at the remand stage. Any ambiguity must be resolved in Plaintiffs' favor. *Alexander*, 13 F.3d at 949; *Coyne*, 183 F.3d at 493.

Because Quality Correctional Care is a Michigan professional corporation and a Michigan citizen, and Plaintiff Jackson is also a Michigan citizen, complete diversity does not exist. With Quality Correctional Care properly joined, this Court lacks subject-matter jurisdiction under 28 U.S.C. § 1332(a), and remand to Wayne County Circuit Court is mandatory under 28 U.S.C. § 1447(c).

## II. DEFENDANT'S IMPROPER REMOVAL LACKED ANY OBJECTIVELY REASONABLE BASIS AND WARRANTS AN AWARD OF PLAINTIFFS' FEES AND COSTS.

Given the clear lack of any reasonable basis for removal in this case, an award of fees and costs is warranted. An order remanding a removed action "may require payment of just costs and any actual expenses, including attorney fees, incurred as a

18

result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). In the Sixth Circuit, removal lacks an objectively reasonable basis when the removing party's arguments are not "fairly supportable." *Warthman v. Genoa Twp. Bd. of Trs.*, 549 F.3d 1055, 1061 (6th Cir. 2008). There is a "**general presumption** that fees should be awarded under such circumstances." *Id.* (emphasis added). Lone Star's arguments here were not fairly supportable. The case for fees is straightforward.

Lone Star had no objectively reasonable grounds to remove this matter. Lone Star's removal was premised entirely on the doctrine of fraudulent joinder, a standard which imposes a "heavy burden" on the removing party. As established above, Sixth Circuit law is clear that remand is required if there is even a "colorable basis" or a "glimmer of hope" that a plaintiff can recover against a non-diverse defendant. *Coyne*, 183 F.3d at 493; *Castle*, 664 F.Supp.3d at 773-74.

Lone Star's removal was not fairly supportable because the complaint it sought to remove contained a paragraph expressly naming Quality Correctional Care as an entity to whom Lone Star's duty of indemnification runs, and Lone Star's Notice of Removal never addressed it. The fraudulent joinder standard does not require Plaintiffs to guarantee a recovery against Quality Correctional Care. It requires only

19

a colorable basis for one. Any objectively reasonable assessment of the complaint's allegations against the governing standard would have identified Paragraph 46 as a fatal obstacle to a fraudulent joinder theory. Lone Star either did not look or chose to proceed anyway. Neither approach is fairly supportable.

The surrounding record makes the unreasonableness of the removal concrete. Four days before filing the Notice of Removal, Lone Star had in hand Quality Correctional Care's Answer, which admitted Quality Correction Care's insured status under the Lone Star policy and asserted twenty-one substantive affirmative defenses on the merits of coverage. No objectively reasonable removing party characterizes a defendant who has retained separate counsel and filed twenty-one merits defenses as a nominal party inserted to destroy diversity. On the same day Lone Star filed the Notice claiming Quality Correctional Care's "rights or duties will not be affected by the outcome of this suit," **(ECF No. 1, PageID.9, ¶ 34)**, Lone Star filed its own Answer admitting Quality Correctional Care is an additional insured under the policy and attaching the policy confirming that status across a schedule and three separate endorsements. The contradiction between what Lone Star asserted in its Notice and what it filed concurrently in its Answer is not explainable as a close call under an uncertain standard. It is the kind of internal inconsistency that demonstrates a removal theory built on ignoring inconvenient facts rather than applying the law to the actual record.

20

Lone Star's alternative realignment argument provides the final confirmation. By arguing that Quality Correctional Care has a sufficient interest in the outcome to warrant realignment as a plaintiff, Lone Star acknowledged the very stake it claimed did not exist. A party with an admitted interest in the outcome of a declaratory action is, by definition, not fraudulently joined. The simultaneous assertion of both theories is not merely inconsistent; it demonstrates that Lone Star's primary fraudulent joinder position lacked the foundation necessary to make removal "fairly supportable" under *Warthman*.

Plaintiffs respectfully request an award of just costs and actual expenses, including attorney fees, incurred as a result of the improper removal, in an amount to be established by separate petition following remand.

21

## CONCLUSION

**WHEREFORE**, Plaintiffs KOHCHISE JACKSON, individually, and KOHCHISE JACKSON, as assignee of DR. KEITH L. PAPENDICK, respectfully request that this Honorable Court enter an Order:

A.     Remanding this case to the Wayne County Circuit Court;

B.     Awarding Plaintiffs their just costs and any actual expenses, including attorney fees, incurred as a result of the improper removal; and

C.     Granting such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/ *Jonathan R. Marko*
Jonathan R. Marko (P72450)
**MARKO LAW, PLLC**
220 W. Congress, Fourth Floor
Detroit, MI 48226
(313) 777-7777 / Fax: (313) 470-2011
Email: jon@markolaw.com

Dated:  June 10, 2026

### PROOF OF SERVICE

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each attorney of record on **June 10, 2026**, via:

☐ U.S. Mail              ☐ Fax
☐ Hand Delivered         ☐ Overnight Carrier
☐ Certified Mail         ☐ Other:  Mi-FILE Truefiling
☒ ECF System             ☐ Email

*/s/ Melinda S. Morisset*

22